**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

AUTO PARTS MANUFACTURING
MISSISSIPPI, a Mississippi Corporation                    PLAINTIFF

V.                                      CIVIL ACTION NO. 1:11CV251-SAA

KING CONSTRUCTION OF
HOUSTON, LLC, a Mississippi
Limited Liability Company                              DEFENDANT/
                                                  CROSS CLAIMANT

and

NOATEX CORPORATION,
a California Corporation                               DEFENDANT/
                                                 CROSS DEFENDANT

**MEMORANDUM OPINION**

There are four motions pending in this action[1]:

- Noatex Corporation's motion to dismiss interpleader action and distribute registry funds and request for expedited disposition, Docket 99;

- Auto Parts Manufacturing Mississippi's ("APMM") motion to amend complaint (filed in state court), Docket 104;

- APMM's motion to substitute parties, Docket 109;[2] and

---

[1]King Construction filed a motion on April 19, 2013 that is not fully briefed.

[2]In its portion of the status report submitted to the court on January 15, 2013, Noatex also lists as pending its motion to dismiss and request for oral argument, Docket 13, its motion to dismiss cross-claim without leave to amend or, alternatively to strike jury demand and request for oral argument, Docket 27, and APMM's motion to discharge plaintiff, Docket 39. Neither APMM nor King Construction list these as pending motions, and all three were terminated as moot on April 12, 2012. Docket 56. Because the only one of motions previously deemed moot that has been re-filed is Noatex's December 26, 2012 motion to dismiss, the court will not address those not re-urged.

•  Motion by Southern Automation and Controls, Inc. to Intervene, Docket 121.

This case has had a tortured procedural history.  Most recently, on December 10, 2012, this court ordered that its Order of April 12, 2012 be vacated in part and the case re-opened.  Docket 89. The court directed the parties to submit a joint status report for this and the other two related cases for two reasons: (1) to inform the court of any actions taken during the period between remand and re-opening or anything that occurred in a related case that might have bearing on this case, and (2) to encourage the parties to work together and lessen the animosity that exists between parties and counsel in this case.   It is clear that the pending motions bring forth issues that must be addressed before the case can move forward.[3]

One of the main problems throughout this action has been a tendency of the parties, and hence the court, to focus on particularities without addressing the "big picture."  The main players are APMM, owner of property in Lee County, Mississippi, who contracted with Noatex as prime contractor to construct a plant on its property.  Noatex subcontracted with King Construction and others for labor and materials necessary to complete the construction project.

## I.  Motion to Amend

APMM filed its Motion to Amend to Join Real Parties as Defendant on September 27, 2012,[4] while the case was pending in the Chancery Court of Lee County, Mississippi. The

---

[3] On February 4, 2013, Noatex filed an amended petition for writ of mandamus in the mandamus proceeding pending before the Fifth Circuit, Case No. 12-60374, asking the Court of Appeals to compel this court to distribute to Noatex the $260,410.15 held in the registry of this court in this case.  Noatex's filing of the amended petition does not divest this court of jurisdiction in this case.  *Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1416 (5th Cir. 1995).

[4] The motion was not filed in this court until December 28, 2012 when the certified copy of the state court record was filed in this court and made a part of the docket of this case.

motion seeks to amend the complaint under Mississippi Rules of Civil Procedure 15, 19, and 20[5] to join Apex Conveyor Manufacturing, LLC, Southern Automation and Controls, Inc., Cooper Electrical Controls, Inc., Kobelco Advance Coating, and Kohn Law Group as additional claimants who have an interest in the interpleaded funds in this case. Docket 104 & 108. Noatex opposes the motion because it contends the proposed amended complaint would be legally meritless. According to Noatex, APMM is only exposed to one claim adverse to Noatex's claim to the specific funds held in the court registry – the adverse claim of defendant King Construction based on the stop notice it filed September 23, 2011 under Mississippi Code Annotated §§ 85-7-181, -131. As a result, says Noatex, interpleader is improper, the motion to amend should be denied and the case itself dismissed. Docket 107.

Rule 15(a)(2) of the Federal Rules of Civil Procedure dictates that amendments to the pleadings should be freely granted when "justice so requires." Nevertheless, the liberal amendment provision of Rule 15 does not require that courts indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, the court need not grant leave to amend. *Foman v. Davis*, 1962, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed. 222, 226 (1962). Denying leave to amend is within the court's discretion, and if the proposed amendment would be futile because it could not survive a motion to dismiss, denial is appropriate. *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010), citing *Briggs v. Mississippi,* 331 F.3d 499, 508 (5th Cir. 2003).

Rule 19(a)(1) *requires* joinder of a person who can be served and will not destroy subject

---

[5] As the case is now pending in this court, Federal Rules of Civil Procedure will govern the motion. The state and federal rules do differ slightly in form, but not significantly in substance.

matter jurisdiction where:

> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Rule 20(a)(1), on the other hand, *permits* joinder for persons if

> **(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> **(B)** any question of law or fact common to all plaintiffs will arise in the action.

APMM contends that the interpleaded funds are the only remaining amounts it owes on the construction project and that if the court denies its motion to amend, it will likely be subject to multiple financial obligations, or at least subject to multiple lawsuits, liens or other legal processes. Noatex disputes that denying the motion to amend would expose APMM to multiple financial obligations.[6] Accordingly, the court will examine the proposed amended complaint and the facts relating to each proposed additional claimant.

### A.    Apex Conveyor Manufacturing, LLC [Apex]

Apex, a foreign corporation that has done business in the State of Mississippi, was a subcontractor for Noatex which provided services or materials on the construction project on property owned by APMM in Guntown, Lee County, Mississippi. Docket 104-2. On February

---

[6] Noatex also denies that the interpleaded funds constitute the entire amount APMM still owes under the contract. While this action has been pending Noatex has increased the amount it claims it is owed at least twice. Docket 108.

27, 2012, Apex filed a Laborer's and Materialman's Lien in the Lee County Chancery Court records against the real property owned by APMM, citing MISS. CODE ANN. § 85-7-131 as authority for the lien. *Id.;* Docket 99-4, Ex. B. The lien asserts that Apex is owed $288,526.90 under a contract between Apex and Noatex on behalf of APMM. *Id.* Apex claims entitlement to unpaid sums allegedly owed to it by Noatex and related to the subject construction project. *Id.*

**B.      Southern Automation and Controls, Inc. [SA]**

SA, a Mississippi corporation, was also a subcontractor for Noatex which provided services or materials on the same construction project. Docket 104-2. On April 18, 2012, SA's attorney wrote to APMM's attorney to notify APMM of unpaid invoices SA had issued to Noatex. *Id.* SA claims entitlement to unpaid sums allegedly owed to it by Noatex growing out of the construction project. *Id.*

On October 30, 2012, SA filed suit in the County Court of Lee County against both Noatex and APMM claiming to be a third-party beneficiary of the general contract between APMM and Noatex in light of services and materials which SA provided for the construction project. Docket 108, p. 2. SA obtained a default judgment against Noatex on March 14, 2013 in the amount of $85,414.14, plus prejudgment interest and reasonable attorneys' fees in the amount of $16,688.75. Docket 121-1, Ex. A. On March 18, 2013, SA filed a motion to intervene in this case. Docket 121. On March 27, 2013, the Lee County Circuit Clerk issued a writ of garnishment against APMM based on SA's judgment against Noatex for sums APMM may owe to Noatex. Docket 125-1, Ex. A.

**C.      Cooper Electrical Controls, Inc. [CEC]**

CEC, a Mississippi Corporation, also was a subcontractor for Noatex which provided

services or materials on the construction project.  On May 1, 2012, CEC notified APMM, through correspondence from its attorney to APMM's attorney, of unpaid purchase orders issued to it by Noatex in the amount of $51,866.23.  Docket 104, p. 5.  CEC claims entitlement to unpaid sums allegedly owed to it by Noatex and related to the subject construction project. Docket 104, Ex.2.

### D.  Kobelco Advanced Coating (America), Inc. [Kobelco]

Kobelco, a foreign corporation doing business in the state of Mississippi, was also a subcontractor for Noatex which provided services or materials on the construction project. Docket 104, Ex. 2.  In August 2012, a Kobelco representative contacted APMM concerning non-payment of three purchase orders submitted by Kobelco to Noatex.  Kobelco claims entitlement to unpaid sums allegedly owed to it by Noatex and related to the subject construction project. *Id.*

### E.  Kohn Law Group, Inc. [Kohn]

Kohn Law Group, Inc. is a foreign corporation that has done and is doing business in the State of Mississippi under an agreement with Noatex performed in part in the State through its principal Robert E. Kohn, who has appeared as counsel for Noatex in various federal court lawsuits related to the interpleaded funds and the construction projects on APPM property in Guntown.  Docket 104.  On September 18, 2012, Kohn filed a lawsuit, as a creditor of Noatex (the debtor), against APMM (the account debtor) and Does 1-10 in the United States District Court for the Central District of California, Western Division.  Kohn sued under §9607(a)(3) of the California Commercial Code to enforce alleged debt obligations in the amount of $260,410.15 – the exact amount interpleaded in this action –  that Kohn claims APMM owes to Noatex.  Docket 104, Ex.1.   Section 9607 permits a secured creditor to enforce the account debt

obligations of its debtor.

Four out of five of these alleged claimants [Proposed Defendant Subcontractors: Apex, SA, CEC and Kobleco] have notified APMM of unpaid claims for work done on APMM's construction project in Guntown, but all four of these claims are founded upon unpaid amounts owed to that particular subcontractor by Noatex, the general contractor on the construction project, by virtue of the subcontractors' direct contracts with Noatex. None of the Proposed Defendant Subcontractors has, nor does Kohn Law Group, Inc. have, a direct contractual relationship with APMM.

## 1. Claims of Proposed Defendant Subcontractors

It is undisputed that Noatex acted as the prime, or general, contractor for the construction project in issue. A general contractor is "the party to whom a building contract is charged with the total construction and who enters into subcontracts for such work as electrical, plumbing and the like." *Associated Dealers Supply, Inc. v. Mississippi Roofing Supply, Inc.,* 589 So.2d 1245, 1247 (Miss.1991). It is also undisputed that Apex, SA, CEC and Kobleco were all subcontractors[7] under general contractor Noatex. As subcontractors, any recourse for amounts unpaid for work done or materials provided is against the general contractor and not the owner of the property. *See Cummings v. Davis,* 751 So.2d 1055 (Miss.App.1999), *citing* W. Smith & B. Hazard, Comment, *Mississippi Law Governing Private Construction Contracts: Some Problems And Proposals,* 47 MISS. L.J. 437, 448–49 (1975). As noted Apex filed a "Laborer's and Materialman's Lien" against APMM's real property "for materials and services furnished

---

[7] The exact nature of the work performed or materials provided by the four subcontractors is not clear from the evidence in the record.

toward" the construction project pursuant to a subcontract between Apex and Noatex. Docket 99-4, pp. 46-54. SA obtained a default judgment against Noatex in its Lee County lawsuit on March 14, 2013, and has moved to intervene in this case. Docket 121. To date, the other two Proposed Defendants Subcontractors have not employed any statutory or judicial means of collection for amounts owed.[8]

At common law, subcontractors are common creditors of the general contractor for whom they agree to provide materials or services. *Jones Supply Co. v. Ishee,* 249 Miss. 515, 527, 163 So.2d 470, 475 (1964). No privity exists between a subcontractor and an owner. *Corrugated Industries, Inc. v. Chattanooga Glass Co.,* 317 So.2d 43, 47 (Miss.1975). Before this court determined it to be unconstitutional (Docket 56), MISS. CODE ANN. § 85-7-181 (Rev. 1999) provided a statutory remedy under which a subcontractor could file a stop notice against an owner if the subcontractor supplied materials or labor for a construction project and was not paid by the general contractor. A separate code section, § 85–7–131, allows "architects, engineers, surveyors, laborers, rental or lease equipment suppliers and materialmen and/or contractors" to secure a lien against the owner's property for services rendered and improvements constructed. Despite the language which might suggest to the contrary, these two statutes have been interpreted to provide separate remedies for subcontractors and materialmen (§ 85-7-181) and for contractors (§85-1-131). *See Chic Creations of Bonita Lakes Mall v. Doleac Electric Co., Inc.,* 791 So.2d 254, 259 (Miss. Ct. App. 2000). Nevertheless, King Construction and now Apex have both asserted that each holds a laborer's and materialman's lien against APMM's Guntown

---

[8] Although SA filed suit naming both Noatex and APMM as parties to the suit, it did not file a stop notice.

8

property under §85-7-131 by virtue of filings in the Chancery Court of Lee County, Mississippi. Docket 99-4, p. 9 [King Construction's "Laborer's and Materialman's Lien and Stop Notice," invoking both §§ 85-1-131 and 85-1-181] and p. 46 [Apex's "Laborer's and Materialman's Lien," invoking only § 85-1-131].

Noatex argues that these laborer's and materialman's liens are invalid because neither King Construction nor Apex is a contractor for APMM or has a contractual relationship with APMM. *See Jay Bearden Construction, Inc. v. Unlimited Construction, Inc.*, 2011 WL 4737572 (S.D. Miss. Oct. 5, 2011), citing *Noble House, Inc. v. W & W Plumbing & Heating, Inc.*, 881 So.2d 377, 386 (Miss.Ct.App.2004) ("The [§§ 87-5-131, -141] remedy does not extend to subcontractors, who, according to the statutory scheme, must pursue a separate remedy under § 85–7–181."). Upon diligent review of applicable case law, the undersigned is persuaded by this argument as it relates to Apex. Unlike the four Proposed Defendant Subcontractors, King Construction took the steps the law at the time required of it to preserve its right to receive payment under its subcontract with Noatex. King Construction was made an original party defendant to this interpleader action; indeed, this case was filed as a direct result of the stop notice King Construction served upon APMM. "[I]nterpleader has its roots in equity." *Matter of Bohart*, 743 F.2d 313, 325 (5th Cir. 1984). Under general principles of equity, which apply in a case of interpleader, King Construction retains a valid claim to the interpleaded funds under equity principles and remains entitled to any monies it is owed for work provided on the construction project. *See Noble House Inc.,* 881 So.2d at 383, and discussion in Part III., *infra.* The fact that this court subsequently found that the statutory remedy was unconstitutional does not mean that King Construction's performance under the subcontract need not be compensated.

9

Each of the claims of the four other Proposed Defendant Subcontractors is in a different position relative to King Construction. Following the line of reasoning suggested by *Noble House* and *Amerihost Development, Inc., v. Bromanco, Inc,* 786 So.2d 362 (Miss. 2001) and other cases cited *infra*, the court determines that by filing a stop notice under § 85-7-181 and notice of lien under § 85-7-131, King Construction asserted a potential claim to the funds interpleaded in this case. Apex also has attempted to assert a claim to unpaid amounts by asserting a lien under §85-7-131; to date, however, Apex has not filed suit against Noatex or taken any further action to recover upon its lien. *See* MISS. CODE ANN. § 85-7-141. Without additional information defining Apex's role as a supplier, materialman or subcontractor, this court is unable to determine the validity of the materialman's lien, and because it has not filed suit, Apex has not taken the steps necessary to enforce the lien under the statute. *See Regions Bank v. Laurel SSA, LLC*, 2011 WL 915811, *5 (S.D. Miss. Mar. 16, 2011) ("Instead of using the subcontractor stop-notice protections, the defendants improperly filed liens as contractors under § 85–7–131. Accordingly, the alleged lien filings by each of the subcontractors did not constitute a valid and legally effective lien as contemplated under the statute."). *See also King v. Hankins*, 209 So. 2d 190, 191 (Miss. 1968) (materialman which did not perfect its statutory lien within prescribed time has no right to a personal judgment against the owner.). SA, on the other hand, filed suit and obtained a judgment against Noatex,[9] but the suit was not filed until October 30, 2012 – almost eleven months after APMM's interpleader action was filed. SA did not take

---

[9] Moreover, the judgment is a general judgment against Noatex, not against the stake held in this interpleader action. Although SA has since obtained a writ of garnishment pursuant to the judgment, the writ, too, is one generally against stakeholder APMM, not the stake. Thus, these actions by SA do not suffice to establish it as a proper interpleader defendant with a claim to the stake. *See Airborne Freight Corp. v. United States,* 195 F. 3d 238, 240-42 (5th Cir. 1999).

steps to perfect a lien under either statute. *See White v. FDIC*, 19 F.2d 249, 252-253 (5th Cir.

1994). Finally, CEC has done nothing other than have its counsel write to APMM to notify it of

Noatex's default.

The Proposed Defendant Subcontractors have not taken the steps necessary to establish a

valid claim to the interpleaded proceeds. APMM's actions did not create any avenue for

equitable relief in the form of an interpleader action for the specific funds the Proposed

Defendant Subcontractors claim they are owed. As a consequence, the court finds that they do

not have a valid claim against the stake, and APMM's motion to amend the complaint to add

subcontractors Apex, SA, CEC and Kobleco should be denied.[10] *Chic Creations of Bonita Lakes*

*Mall v. Doleac Elec. Co., Inc.,* 791 So.2d 254, 259 (Miss. Ct. App. 2000). King Construction's

claim remains as an equitable right to the interpleaded funds created when APMM originally

filed this suit naming both Noatex and King as parties and interpleaded funds equal to the

amount of King Construction's stop notice in direct response to the notice.

## 2. Kohn Claim

On September 18, 2012, Kohn filed a lawsuit in California federal court under §

9607(a)(3) of the California Commercial Code against APMM and Does 1-10 to enforce Kohn's

alleged creditor interest in a $260,410.15 debt obligation which Kohn alleged was owed to

---

[10] The court is not unaware that these four subcontractors, Apex, SA, CEC and Kobleco, have a true dilemma: they can no longer in good faith serve a stop notice in light of the court's invalidation of that provision, yet they are unable to perfect a lien for their labor or supplies under § 87-5-131, and there has been no interpleader filed with respect to their interests that would allow them an avenue for equitable relief. With the special protections afforded by § 87-5-181 invalidated, the court may only look to the common law, which afforded no remedy for a subcontractor against an owner. This dilemma can only be resolved by the Mississippi Legislature. The subcontractors clearly have a right to sue Noatex directly, however, and thereafter take steps to enforce any judgment obtained against it.

Noatex by APMM.[11]  Docket 104-1.  As stated in the complaint:

> This is an action by a creditor to enforce an account that is owed to the debtor.
> Plaintiff Kohn Law is the creditor.  Noatex is the debtor.  And Defendant APMM
> is the account debtor, APMM owes Noatex at least $260,410.15.

Docket 104-1, p.2.  As an exhibit to its Motion to Dismiss Interpleader Action and Distribute

Registry Funds, Noatex provided the court with a statement from Osamu Nishiyama, the

president of Noatex, and e-mails from Nishiyama to the president of APMM stating that

Nishiyama has "seen the lawsuit" and asking that APMM pay the money to the Kohn Law

Group.  Docket 99, Exs. 1 & 3.[12]

Whether the interpleader is brought under rule or statute, the claimants to the fund must

be adverse to one another, *General Accident Group v. Gagliardi*, 593 F.Supp. 1080, 1087 (D.

Conn. 1984), and there must be a legitimate fear of exposure to multiple litigation directed

against the fund.  *6247 Atlas Corp. v. Marine Insurance Co., Ltd.*, 155 F.R.D. 454, 462

(S.D.N.Y. 1994);  *General Accident Group v. Gagliardi*, 593 F.Supp. at 1087.  Kohn already has

filed suit against APMM and, thus, already has subjected APMM to multiple litigation and

possibly multiple liability.  APMM does not have a mere fear of multiple suits, but other

litigation is currently pending.  Kohn has asserted a claim in another federal court against the

funds interpleaded in this case and alleges that it has an interest to these specific funds at stake in

---

[11] Kohn alleges that "Noatex has defaulted on a secured obligation to Kohn Law" and that
§ 9607(a)(3) permits Kohn, as "the creditor," to "enforce the account debt obligations that
APMM owes to Noatex."  The California Complaint for Common Counts does not include
documentation supporting the claimed secured nature of the debt from Noatex to Kohn.

[12] After obtaining its own translation, the court determined that the substance of the e-
mails between Mr. Nishiyama and Mr. Tsuchida goes beyond the limited interpretation provided
by Noatex.

this case. Therefore, the court finds that it is proper to join Kohn as a party to this action under Federal Rule of Civil Procedure 20.[13]

## II. Motion To Substitute Party

On January 10, 2013, APMM filed a motion to substitute Kohn in place of Noatex in this case under Rule 25(c). Docket 109. APMM cites the fact that Kohn filed suit in California as a secured creditor seeking recovery of the interpleaded funds in this case as a judgment in its favor. Docket 110, citing Docket 104-2. Noatex, Kohn's client, contests the motion, asserting that there has been no "transfer" of an interest from Noatex to Kohn; further, says Noatex, even if there has been a "partial transfer of Noatex's interests after this action was commenced, . . . joining Kohn Law as a party with Noatex would risk creating an ethical violation."[14] Docket 114, p.1.

Kohn's complaint in California action alleges that:

14. The written engagement agreement of October 7, 2011 between Kohn Law and Noatex confers a lien in favor of Kohn Law upon APMM's obligations to pay Noatex the amount of $260,410.15.

15. Kohn Law's contractual lien upon APMM's obligations to pay Noatex the

---

[13] In the December 11, 2012 Order from the California District Court in the case of Kohn Law Group v. Auto Parts Manufacturing Mississippi, Inc., et al, CV-12 08063-MWF (MRWx), the court noted: "Practically speaking, Kohn's Complaint asks this Court to short-circuit the ongoing Mississippi interpleader action as to this $260,410.15 and award the funds to Kohn. . . . To the extent Noatex is entitled to the $260,410.15, Kohn may properly litigate this lawsuit to collect that amount from APMM. . . . Significantly, if Kohn is joined as a party, the Mississippi court may award Kohn the $260,410.15 as part of the interpleader action. Alternatively, if Kohn is correct and APMM cannot maintain the interpleader action, then the stay [in the CA case] may be lifted." Docket 99, Exhibit 6.

[14] The court cannot help but note that any risk of "ethical violation" is a risk attributable to Kohn's filing suit in California against APMM asserting a right against the stake held in Mississippi.

amount of $260,410.15 has precedence over any other liens, including any liens arising by judgment against Noatex or by attachment.

Docket 104-1, ¶14 & 15.  It appears that by agreement with Noatex, Kohn has at least has attempted to obtain an interest in the funds presently interpleaded into the registry of this court. To date there has been no legal determination as to Kohn's asserted interests.

Rule 25(c) of the Federal Rules of Civil Procedure provides:

(c) Transfer of Interest. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

This rule relating to substitution of parties on the transfer of the claim after suit has been filed is procedural only and does not affect the substantive rights of the parties, which are determined by state law.  *In the Matter of Covington Grain Co.*, 638 F.2d 1357, 1360 ( 5th Cir. 1981);  *see also* 7C Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d §1958, at 691-701 (3d ed.). Whether or not Kohn is made a party to this suit under Rule 25(c) is discretionary, *id.*, but it is evident from the pleadings filed in this court and in the California suit, as well as the December 11, 2012 Order issued by Judge Fitzgerald in the California case, that Kohn asserts an interest in the $260,410.15 held by this court.

Because APMM has been granted leave to amend its complaint to add Kohn as a party, the motion to substitute is somewhat of a non-issue.  The bottom line is that King Construction was owed money by Noatex for involvement in APMM's construction project.  The pleadings in this case reflect that APMM and Noatex agree that Noatex is also owed at least the $260,410.15 which APMM withheld as the result of King Construction's filing of the stop notice.  The precise amount owed to King Construction or Noatex has not been conclusively established by

14

evidence in the record.  Further, Kohn has not yet established a clear right to the monies that may

or may not belong to Noatex.  To substitute Kohn as a party in place of Noatex, thus releasing

Noatex as a party, would not be prudent at this time, particularly since Kohn will be added as a

party.  The motion to substitute is denied.

### III.  Motion to Dismiss Interpleader and Distribute
### Registry Funds and Request for Expedited Consideration

On December 26, 2012, Noatex filed a motion to dismiss this interpleader and to

distribute the registry funds; it requested expedited consideration of the motion.[15]  Noatex argues

that APMM has withheld money owed to Noatex – the $260,410.15 interpleaded into the registry

of this court – and deprived Noatex of the funds without due process.[16]  Although this argument

is at best an oversimplification of the facts in this case, it is not without merit.

The main point of the relief sought in an interpleader action is the avoiding the burden of

unnecessary litigation or the risk of loss by the establishment of multiple liability when only a

single obligation is owed.  These risks are avoided by adjudication of the multiple claims in a

single interpleader action which is binding on the parties.  *Fulton v. Kaiser Steel Corp.*, 397 F.2d

580, 582-83 (5th Cir. 1968), citing *State of Texas v. State of Florida*, 306 U.S. 398, 412, 59 S.Ct.

563, 570, 83 L.Ed. 817, 828 (1939).   Interpleader generally is a suit in equity which is governed

---

[15] Not only did counsel for Noatex not contact the undersigned's chambers as required by Local Uniform Civil Rule 7(b)(6) to ensure expedited consideration, but granting expedited consideration of this motion would have conflicted with the court's December 5, 2012 order to file a joint status report.

[16] In keeping with the puzzling choices made by the parties throughout this and the other related actions, for some unexplained reason, Noatex has never exercised its clear right to institute direct proceedings against APMM to collect the debts it continues to claim that APMM owes it, despite Noatex's continued insistence to APMM that APMM owes Noatex substantial additional sums.

by equitable principles, *Sanders v. Armour Fertilizer Works*, 292 U.S. 190, 54 S.Ct. 677, 78

L.Ed. 1206 (1934); *Austin v. Texas-Ohio Gas Co.*, 218 F.2d 739 (5th Cir. 1955), and the usual

rules of pleading are applicable. 7 Wright, Miller & Kane, §1715, at 631.

Interpleader proceedings provide a remedy involving two steps or stages. *Mid-America

Indemnity Co. v. McMahan*, 666 F. Supp 926, 928 (S. D. Miss. 1987), *citing* 7 Wright, Miller &

Kane, §1714, at 581. The first stage provides the court opportunity to determine whether the

interpleader is proper and all prerequisites have been met. *Mid-America Indemnity Co.,* 666 F.

Supp. at 928. "If there is a single fund at issue and adverse claimants to that fund, this

requirement is usually satisfied." *Gen. Elec. Capital Assurance v. Van Norman*, 209 F. Supp. 2d

668, 670 (S.D. Tex. 2002), citing *Rhoades v. Casey,* 196 F.3d 592, 600 (5th Cir.1999). Once the

court has satisfied this initial stage, the action is allowed to proceed.

The second stage involves the determination of the rights of the claimants to the

interpleaded funds. *Shelter Life Insurance Co. v. Stallard,* 2010 WL 200013, *2 (S.D. Miss.

January 14, 2010). After the action has been filed, the funds have been deposited and the court

has determined that interpleader is an appropriate remedy, "it may issue an order discharging the

stakeholder, if the stakeholder is disinterested, enjoining the parties from prosecuting any other

proceeding related to the same subject matter, . . . .[T]he court may also make any other order

that is appropriate and convenient for the resolution of competing claims." 7 Wright, Miller &

Kane, §1714, at 627. "Ordinarily, each claimant should file an answer setting out any defenses

to the interpleader action, a statement of the claim to the res in contest and additional claims

against the stakeholder or the other claimants within the limits on counterclaims and cross-

claims in interpleader proceedings. . . ." *Id.,* at 631-32. It is not enough for a party merely to

16

assert a claim to the interpleaded funds; it must establish how it is entitled to the funds or a portion of them. *Noble House*, 881 So.2d at 384.

In *Chic Creations* the Mississippi Court of Appeals rejected the argument that once the interpleader has been determined to be proper the next stage of the case is simply about distribution to the interpleader defendants. 791 So.2d at 257. Instead, a claimant must prove its entitlement to the money. *Id.* (claimant must demonstrate how it is entitled to the particular fund and not simply show that the contractor owes it money). Likewise, the Fifth Circuit has held "[o]nce money is deposited into the court's registry, the money is held by the court pending a determination of which party's claim is superior." *White v. F.D.I.C.,* 19 F.3d 249, 252 (5th Cir.1994). "In other words, 'the court can be said to have taken custody of the money for the benefit of the rightful owner, creating a trust for the purpose of preserving the funds and thereby securing the rightful owner's claim to them.'" *Id.,* quoting *Avant Petroleum, Inc. v. Bangue Paribas,* 853 F.2d 140, 145 (2nd Cir.1988).

In *Noble House* the Mississippi Court of Appeals affirmed the Circuit Court of Adams County's decision to amend an agreed judgment of dismissal of claims between Noble House, owner of a construction project, and its general contractor Ransom, to first require that they pay the claims of subcontractor W&W before they settled and dismissed their own claims. *Noble House Inc.,* 881 So.2d at 383. During the course of construction Ransom had engaged W&W Plumbing & Heating to correct and complete work done on the project. *Id.* As the project neared completion Noble House terminated its contract with Ransom for failure to complete the project in a timely and workman-like manner and withheld its final payment to Ransom, who in turn did not pay W&W the final amount it was owed for plumbing work. *Id.* Thereafter, Noble

17

House filed suit against Ransom and W&W, interpleading $72,356. Noble House named W&W as an additional defendant because it alleged that Ransom still owed $25,105.27 to W&W for its work on the project. *Id. at 380.*

During the course of the case the court granted partial summary judgment for W&W, finding that both Noble House and Ransom had expressly requested that W&W perform the work it had done on the project, and that W&W completed the work according to specifications. *Id.* at 381. The court further ruled that although W&W had no claim against Noble House as owner, it nevertheless was entitled to payment from the funds Noble House had deposited with the court. *Id.* When Noble House and Ransom subsequently presented an agreed order to the judge directing the clerk of court to divide the interpled funds evenly between Noble House and Ransom, the judge amended the order to add a provision that the money could only be disbursed to Noble House and Ransom "[a]fter *first* paying the sum of $25,105.27 to W&W Plumbing and Heating, Inc." *Id.* The court denied Noble House and Ransom's motion to alter or amend the judgment because W&W had been made a party to the interpleader by Noble House and had been determined to have a valid claim to the funds. *Id.*

On appeal by Noble House and Ransom, the Mississippi Court of Appeals held that the lower court had not abused its discretion. *Id.* at 382. The court noted that W&W was not entitled, as a subcontractor, to bring a claim directly against project owner Noble House and had not sought statutory relief against the contractor under MISS. CODE ANN. §§85-7-131, 85-7-141, or 85-7-181. Still, W&W was entitled to be paid the amount it was undisputedly owed from the interpleaded funds as "following the statutory notice filing procedures is only required when a subcontractor seeks to pursue a statutory remedy against a property owner; it is not a prerequisite

18

to eligibility for funds interpled pursuant to a Rule 22 action." *Id.* at 383-384.

The court of appeals looked to *Amerihost Dev., Inc. v. Bromanco, Inc.*, 786 So.2d 362 (Miss. 2001), to conclude that when Noble House filed the interpleader action, it "'sufficiently demonstrated that it was willing to pay whomever the trial court determined had a valid claim to the interpled funds.'" *Noble House*, 881 So.2d at 384, quoting *Amerihost Dev., Inc. v. Bromanco, Inc.*, 786 So.2d 362, 367 (Miss. 2001). The appellate court agreed that the lower court "correctly found that W & W Plumbing's only relief lay with the funds ostensibly interpled on its behalf, and not in any action against either Noble House or Ransom." *Id.* at 385. Finally, the court held that because "pursuing statutory remedies is not a prerequisite to a Rule 22 interpleader action," W&W was on equal footing with Ransom in the interpleader action. *Id.* at 386.

In *Amerihost* the Mississippi Supreme Court first noted that although normally a subcontractor who fails to assert a timely stop notice has no rights against the owner's funds and quoted with approval the lower court's opinion:

> To allow those who failed to avail themselves of [the benefit of the stop notice provisions of § 85-7-181] would seek to circumvent the statutory requirements and ride the coat-tails of those subcontractors and materialmen who actually asserted their rights.

786 So. 2d at 366. *See also Engle Acoustic & Tile, Inc. v. Grenfell,* 223 So.2d 613, 618-19 (Miss.1969) (subcontractor who did not invoke statutory remedies was not entitled to mechanics lien). Nevertheless, the Supreme Court found that an owner who interpleads funds under Mississippi Rule of Civil Procedure 22 and names both the general contractor and the subcontractor as defendants may create an equitable right in the subcontractor to the interpleaded funds even though no stop notice had been sent by the subcontractor. *Amerihost*, 786 So. 2d. at

19

367; *see also Noble House*, 881 So. 2d. at 386.

APMM disclaimed in its interpleader complaint any interest in the $260,410.15 – the amount claimed in King Construction's September 23, 2011 stop notice. Docket 2. On that date APMM owed Noatex $179,707.40. *Id.* Three separate lawsuits were subsequently filed relating to the money. On April 12, 2012, this court determined in Civil Action No. 3:11cv137-SAA that "the net effect of depriving Noatex of the use of money earned is the same as a prejudgment attachment, and, in the court's opinion, the freezing of the funds constitutes an interference with a significant property interest." Docket 56, p. 15. This court granted Noatex's motion for summary judgment and declared that Mississippi's Stop Notice Statute, Miss. Code Ann §85-7-181 was facially unconstitutional, vacated the King Construction stop notice and held that the notice "has no effect on the funds withheld by APMM," *i.e.*, the stop notice did not bind the funds in APMM's hands. *Id.* at 20. Without King Construction's valid stop notice, says Noatex, it is the only remaining claimant with a valid claim to the $260,410.15 that is at the center of this controversy.

Interpleader is improper "where one of the claims clearly is devoid of substance, or one of the claimants . . . has dropped his claim and the fear of multiple litigation or liability is groundless, or the claims are not asserted against the same fund, or the stakeholder may be liable to both claimants." 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d §1705, at 549-50 (3rd Ed. 2011). Moreover, the fact that a specific amount has been interpleaded does not entitle a claimant to the funds in their entirety. *Chic Creations,* 791 So.2d at 257 (¶ 10); *see Berryman v. Lannom*, 94 So. 3d 1238, 1242-43 (Miss. Ct. App. 2012) (each claimant must establish his right to the property by a preponderance of the evidence).

20

APMM's complaint named King Construction and Noatex as defendants. Docket 2. King Construction filed its Defenses, Answer and Crossclaim against Noatex on December 22, 2011, making a claim to the full amount of the interpleaded $260,410.15, and providing purchase orders and invoices for the labor and materials it provided for work done on APMM's construction project. Docket 12. To date, Noatex has not filed an answer or other pleading in this case to establish its claim to the funds in issue. Nevertheless, it would be disingenuous for the undersigned not to acknowledge that, despite this procedural status, Noatex claims it is entitled to the all the interpled funds. King Construction made attempts to assert its rights to collect monies it was owed by implementing the statutory remedies available under §§ 85-7-313, *et seq.* These remedies would have provided King Construction with an avenue for recovery from Noatex before this court found the stop notice statute unconstitutional April 12, 2012. Docket 56.

Both APMM and Noatex seem to agree that King Construction was owed money at the time it filed the stop notice. However, there is a dispute as to the amount King Construction is owed. The various motions, responses and memoranda in this case also support the allegation that Noatex is owed $260,410.15. Docket 56, p.3, n.6. However, the court is unable to determine the exact basis for this specific amount, other than by reference to the King Construction Stop Notice. APMM has stated that since this action was filed, Noatex has submitted statements to APMM for an additional $484,731.75 in invoices it claims are owed, bringing the amount claimed by Noatex from APMM to a total of $744,871.90. Docket 76, p. 4, n.3. Noatex disputes APMM's description of the amount it claims against APMM and acknowledges only that it submitted a statement for invoices from Noatex to APMM for an

amount in excess of the $260,410.15.  As of the court's April 12, 2012 Order, it appears that it is generally accepted by the parties that APMM owed $260,410.15 to either Noatex or King Construction and no longer claims an interest in this amount.  Docket 56, p.3, n.6.  Further, it appears that Noatex may have conferred a lien in favor of Kohn upon APMM's obligations to pay Noatex the amount of $260,410.15.[17]  Docket 99, Exhibit C.   The court has insufficient information to determine whether this "charging lien" would entitle Kohn to the money instead of Noatex or whether the money should be distributed to Kohn on behalf of its client, Noatex.

Under Rule 12(b)(6) a motion to dismiss should be granted where the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Although interpleader is improper if there no longer exist two or more claims to the same fund, *see* 7 Wright, Miller, Kane & Marcus, §1705, an action for interpleader is proper and should stand where single fund is in issue, and there are two or more adverse claimants to that fund.  *General Electric Capital Assurance,* 209 F. Supp. 2d at 670, citing *Rhoades v. Casey,* 196 F.3d 592, 600 (5th Cir.1999).  Because King Construction no longer has a viable claim under the traditional remedies afforded a subcontractor, this case may be its only means to relief.  *Noble House*, 881 So.2d at 385.  After considering all facts in this case, and following the equitable principles set out in *Noble House* and *Amerihost, supra,* the court finds that there remain legitimate claims by both King Construction and Noatex, and likely Kohn, to the interpleaded funds in this case.  Noatex's motion to dismiss and to disburse funds is denied.

---

[17] The court has not been provided with a copy of the agreement between Noatex and Kohn.

### IV.  SA's Motion to Intervene

On March 18, 2013, SA filed a motion to intervene in this action to collect on its $102,102.89 default judgment against Noatex.  Docket 122, Ex. A.  Noatex opposes SA's motion to intervene because SA is merely an unsecured creditor of APMM and Noatex.  Noatex also contends that SA could not acquire any interest in the interpleaded funds after November 15, 2011, the date the interpleader action was filed.  Docket 124.  SA has served a writ of garnishment on APMM for satisfaction of the judgment it has against Noatex, and it posits that denial of its motion to intervene would likely deprive it of "the best opportunity available to it to recover its judgment."  Docket 125 p. 7.  Although sympathetic to SA's position, the court is not persuaded that its intervention is proper.

Rule 24 specifies when strangers, that is, individuals not parties to a suit, may intervene and become a party.  Generally, there are two types of intervention: intervention of right and permissive intervention.  Fed. R. Civ. P. 24.  Intervention as a matter of right means the intervenor has a legal or statutory right entitling him to become a party.  *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1124 (5th Cir. 1970).  To qualify for intervention as of right,

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*League of United Latin American Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 187 (5th Cir. 1989), citing *International Tank Terminals, Ltd. v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir.1978).  Permissive intervention applies a less stringent standard and generally leaves the decision to the discretion of the court.  *Hopwood v. State of Texas,* 21 F.3d 603, 606

(5th Cir.1994); *see also State Farm Fire & Casualty Co. v. Evans*, 1996 WL 407545 (N.D. Miss. April 19, 1996). In considering a request for permissive intervention, the court may consider other factors, such as whether the intervenors are adequately represented by other parties and whether the intervenors are likely to contribute to the development of the underlying factual issues. *League of United Latin American Citizens,* 884 F.2d 185 at 189.

The complaint for interpleader was filed on November 11, 2011. Docket 2. SA did not file suit against APMM and Noatex until October 30, 2012 and did not obtain the judgment against Noatex until March 14, 2013. Docket 123, Ex. 3 and Docket 121, Ex. 1. APMM deposited the $260,410.15 stake with this court on February 2, 2012. The clerk returned the funds to counsel for APMM upon remand on May 14, 2012, and APMM redeposited the stake with this court after the case was reopened on the court's docket in December 2012. Once money is deposited into the court's registry, the money is held by the court pending a determination of which party's claim is superior. *White,* 19 F.3d at 252-53. In other words, "[t]he court can be said to have taken custody of the money for the benefit of the rightful owner, creating a trust for the purpose of preserving the funds and thereby securing the rightful owner's claim to them." *White,* 19 F.3d at 252, quoting *Avant Petroleum, Inc. v. Banque Paribas,* 652 F.Supp 542, 547 (S.D.N.Y. 1987).

The very purpose of an interpleader action is to protect the stake claimed by the parties. While held in the custody of the court, the money is protected from attempts by a secured creditor to take any action against the money to enforce a claim. *White,* 19 F.3d at 252. To allow a claimant to obtain a right to the fund or an advantage over another claimant while an interpleader action is pending, "would create the bizarre result that the very act of setting up the

24

'trust' in order to protect and preserve the property for the benefit of its rightful owner would be the indirect cause of that rightful owner losing its rights in the property." *White* 19 F.3d at 252, quoting *Avant,* 652 F.Supp. at 547 (S.D.N.Y. 1987).

Even though SA filed suit against Noatex during the period that the stake had been returned to APMM, it did not obtain a judgment or a writ of garnishment until well after the funds had been re-deposited with this court. This belated establishment of any right to any funds owed is of no effect in this interpleader action. The judgment is a general judgment solely against Noatex and is not directly related to the specific funds interpleaded in this case. Despite APMM's claim that these are the only remaining outstanding monies relating to its Guntown construction project, and despite the writ of garnishment issued to APMM, SA did not possess an interest in the stake at the time the interpleader was filed; as a result, none of the interpleaded funds are subject to the writ of garnishment. *White*, 19 F.3d at 252. As of the initiation of the original interpleader in this case, and even as of its reopening on the docket in this court, SA held no perfected interest in the funds. There remain other means by which SA can collect against Noatex than within this action. SA has a pending action against APMM. APMM has not provided SA the same equitable route to payment that it provided to King Construction when it named King Construction as a claimant to the funds. Allowing SA to intervene and possibly impinge or impede the rights of the claimants in this action would be contrary to the equitable principles of interpleader. SA's motion to intervene is denied.

## CONCLUSION

The court holds that APMM's motion to amend is granted in part and denied in part as delineated in this opinion. APMM's motion to substitute is denied. Noatex's motion to dismiss

25

and to disburse funds is denied. SA's motion to intervene is denied. APMM is granted seven days from the date of this opinion to revise and file an amended complaint in accordance with this opinion. Thereafter, and without addressing the merits of such a motion, APMM may file a motion or re-urge its previous motion seeking dismissal from this case as a disinterested stakeholder.

A separate Order will issue this day in accordance with this decision.

THIS, the 23rd day of April, 2013.

_____/s/ S. Allan Alexander_____
UNITED STATED MAGISTRATE JUDGE