IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

AUTO PARTS MANUFACTURING MISSISSIPPI
INC., a Mississippi corporation                                                                          PLAINTIFF

v.                                                                    CIVIL ACTION NO. 1:11-CV-00251-GHD-SAA

KING CONSTRUCTION OF HOUSTON,
LLC, a Mississippi limited liability
Company; and NOATEX CORPORATION,
a California corporation; and KOHN LAW
GROUP, INC., a California corporation                                                                    DEFENDANTS

## MEMORANDUM OPINION GRANTING AUTO PARTS MANUFACTURING MISSISSIPPI INC.'S MOTION TO DISMISS OR DISCHARGE PLAINTIFF

Presently before the Court in this stormy interpleader action is a motion to dismiss or discharge plaintiff [175] filed by Plaintiff Auto Parts Manufacturing Mississippi Inc. ("APMM"). Upon due consideration, the Court finds that the motion should be granted and that APMM should be dismissed from the case.

*A. Factual and Procedural Background*

APMM contracted with Noatex Corporation ("Noatex") for Noatex to construct an auto parts manufacturing facility in Guntown, Mississippi. Noatex subcontracted with King Construction of Houston, LLC ("King Construction") to provide some materials and labor for the construction. Noatex alleges that APMM owes it money for goods and services that Noatex provided to APMM under the contract. Noatex questions some of the invoices submitted to it by King Construction pertaining to the subcontract work. In response to this billing dispute between Noatex and King Construction, King Construction notified APMM on September 23, 2011, pursuant to Mississippi's "Stop Notice" Statute, Mississippi Code § 85-7-181 (the "Stop

1

Notice statute"), that Noatex owed King Construction $260,410.15 and that King Construction was filing a "Laborer's and Materialman's Lien and Stop Notice" in the Chancery Court of Lee County, Mississippi. On the date of notification, APMM owed Noatex $179,707.40. The stop notice bound the disputed funds in APMM's hands to secure invoice claims that Noatex allegedly owed to King Construction. *See* MISS. CODE ANN. § 85-7-181 ("[T]he amount that may be due . . . shall be bound in the hands of such owner for the payment in full . . . ."). King Construction's filing of the stop notice in the *lis pendens* record of the chancery court had the effect of establishing King Construction's lien priority over the property that was the subject of the dispute. *See* Mississippi Code § 85-7-197. APMM later deposited the $260,410.15 in the registry of the Chancery Court of Lee County.

This dispute resulted in three lawsuits, one of which is the case *sub judice*.[1] APMM filed this action in the Chancery Court of Lee County to determine ownership of the disputed funds subject to King Construction's stop notice, naming both Noatex and King Construction as defendants. In December of 2011, Noatex removed this action to this Court. APMM deposited the money into Court registry. The interpleaded funds are currently impounded in the Court's registry pending disposition.

On May 23, 2013, APMM filed the present motion to discharge [175] itself as a

---

[1] The other two lawsuits are a declaratory action and breach of contract action. Noatex filed the declaratory action (3:11-cv-00137-SAA) against King Construction and its principal Carl King, challenging the facial constitutionality and constitutionality-as-applied of the Stop Notice statute. The State of Mississippi intervened as a defendant to defend the constitutionality of its statute. United States Magistrate Judge S. Allan Alexander issued a declaratory judgment in favor of Noatex, concluding that § 85-7-181 violated due process and that King Construction's stop notice thus had no effect on the funds APMM had deposited in the Court's registry. On appeal, *inter alia*, the Fifth Circuit affirmed the Court's determination that Mississippi's Stop Notice statute was facially unconstitutional due to the lack of procedural safeguards that amounted to a facially unconstitutional deprivation of property without due process. This ruling did not include a determination as to any of the parties' rights to the money frozen by the stop notice. In the other suit (No. 3:11-cv-00152-SAA), Noatex sued King Construction for breach of contract in this Court claiming damages in excess of $500,000, but that action was dismissed when this Court granted Noatex's motion to voluntarily dismiss its breach of contract action without prejudice.

disinterested stakeholder in this action. Subsequently, Noatex and Kohn Law Group filed a joint response in opposition to the motion, but King Construction did not file a response in opposition to the motion. APMM filed a reply. The motion is now ripe for review.

*B. Analysis and Discussion*

The Court "has broad powers in an interpleader action," including the power to discharge the plaintiff who is a disinterested stakeholder. 28 U.S.C. § 2361; *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999); 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1714 (3d ed. 2001). Interpleader offers a procedural protection for the stakeholder willing to deposit the amount into the court registry from the expenses and risks of defending the action; the idea is that the stakeholder gives up the money and allows those among whom the dispute really exists to fight it out at their own expense and in turn the stakeholder is shielded from the liability of defending multiple possible lawsuits. *See Tittle v. Enron Corp.*, 463 F.3d 410, 423 (5th Cir. 2006) ("The legislative purpose of an interpleader action is to remedy the problems posed by multiple claimants to a single fund, and to protect a stakeholder from the possibility of multiple claims on a single fund."); *Wausau Ins. Cos. v. Gifford*, 954 F.2d 1098, 1100 (5th Cir. 1992); *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364 (5th Cir. 1983).

Traditionally, the stakeholder filed a bill of interpleader and neither asserted an interest in the fund nor contested the extent of the liability; instead, the stakeholder brought the money or property into court and was discharged, leaving the court to determine the rights of the adverse claimants to the money or property. *See Texas v. Florida*, 306 U.S. 398, 406, 59 S. Ct. 563, 83 L. Ed. 817 (1939); 7 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 1702 (3d ed. 2001). *See generally* Ralph V. Rogers, *Historical*

*Origins of Interpleader*, 51 YALE L.J. 924 (1942); Zechariah Chafee, Jr., *Modernizing Interpleader*, 30 YALE L.J. 814 (1921). Courts gradually adopted a bill in the nature of interpleader, wherein the stakeholder asserted an interest in the fund or denied liability to one or more of the claimants but called upon the court to exercise its jurisdiction to guard against the risks of loss from the prosecution in independent suits of rival claims. *See Texas v. Florida*, 306 U.S. at 406–07, 59 S. Ct. 563.

From this background, two types of interpleader were developed: statutory interpleader under The Federal Interpleader Act of 1936, 28 U.S.C. § 1335, and traditional equitable interpleader under Rule 22 of the Federal Rules of Civil Procedure. Both types of interpleader encompass the traditional bill of interpleader and bill in the nature of interpleader and have different requirements. *See Haynes v. Felder*, 239 F.2d 868, 871 (5th Cir. 1957). Section 1335 interpleader requires only a $500 amount in controversy, minimal diversity among the claimants,[2] venue in any district where any claimant resides, and nationwide service of process. 28 U.S.C. §§ 1335, 1397, 2361. Rule 22 interpleader requires a $10,000 amount in controversy, complete diversity among the stakeholder and the claimants unless a federal question is present, avenue where all plaintiffs or all defendants reside or where the claim arose, and statewide service of process. 28 U.S.C. §§ 1332(a)(1), 1391(a); FED. R. CIV. P. 4.

The Fifth Circuit Court of Appeals has instructed:

> An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. 7C WRIGHT, MILLER & KANE, FEDERAL

---

[2] Minimal diversity is "diversity of citizenship between two or more claimants." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530, 87 S. Ct. 1199, 18 L. Ed. 2d 270 (1967). The language of § 1335 requires no more than " 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *Id.*, 87 S. Ct. 1199.

4

> PRACTICE & PROCEDURE 2d § 1714 (1986). If the district court finds that the interpleader action has been properly brought[,] the district court will then make a determination of the respective rights of the claimants.

*Rhoades*, 196 F.3d at 600.

In the case *sub judice*, the Court finds that the requirements for § 1335 interpleader have been met. First, APMM, a corporation, commenced this interpleader action concerning the amount of $260,410.15, which APMM contends it owes, thus meeting the $500 amount-in-controversy requirement of § 1335(a). Second, three claimants claim entitlement to the fund: King Construction (Mississippi resident) on one side, and Noatex and Kohn Law Group (both California residents) on the other side. Although Noatex and Kohn Law Group argue that APMM cannot show that King Construction asserts any claim to the interpleader fund, the Court finds this argument is baseless. The Court has not yet determined the respective rights of the parties as to the money; the only ruling in this respect to date is that the stop notice procedure invoked by King Construction was unconstitutional. *See Noatex Corp. v. King Constr. of Houston, L.L.C.*, 732 F.3d 479, 488 (5th Cir. 2013). The claimants have independently expressed their claims of entitlement to the money at stake.[3] Indeed, the Court finds that the only Article III case or controversy here exists between these claimants. Thus, two or more adverse claimants are present who claim entitlement to the fund and are minimally diverse, as required by § 1335(a)(1). Finally, APMM has deposited the money into the Court registry, there to abide the judgment of the Court, as required by § 1335(a)(2). The requirements for statutory

---

[3] Noatex and Kohn Law Group agree that APMM owes at least the amount in the Court registry but argues that APMM could owe some additional disputed sums to King Construction. However, King Construction has not filed any response in opposition to APMM's motion for discharge as a disinterested stakeholder. The Court finds that this argument by Noatex and Kohn Law Group, if anything, only highlights the "claims of the conflicting claimants" that are "adverse to and independent of one another," which is obviously expected in an interpleader action. *See* 28 U.S.C. § 1335(b).

interpleader have been met. Thus, the Court turns to the other arguments by Noatex and Kohn Law Group against discharge of APMM as a disinterested stakeholder.

First, Noatex and Kohn Law Group argue that APMM cannot be discharged at this juncture because the case should be stayed pending arbitration of an engagement agreement between Kohn Law Group and Noatex and cites to its motion to stay the case for arbitration [177]. The Court is of the opinion that the motion for discharge should be ruled on prior to the motion to stay the case for arbitration, particularly since the proposed arbitration arises out of an agreement between Kohn Law Group and Noatex and does not pertain to King Construction. The Court notes that it will address the merits of the motion to stay for arbitration at a later date.

Second, Noatex and Kohn Law Group argue that APMM cannot be discharged because APMM is responsible for interest on the fund for the four-month period between remand of this action to state court and deposit of the money into the state-court registry, during which time Noatex sought a recall of the remand order at both the trial and appellate levels. In examining this issue, the Court turns to the principles of law that govern interest in interpleader actions.

"The usual and general rule is that any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162, 101 S. Ct. 446, 66 L. Ed. 2d 358 (1980) (citing cases); *see, e.g., James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 463 (5th Cir.), *cert. denied sub nom. City Trade & Indus., Ltd. v. Allahabad Bank, Ltd.*, 404 U.S. 940, 92 S. Ct. 280, 30 L. Ed. 2d 253 (1971); *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1165 (5th Cir. 1976). The rule that "interest follows principal" has been established under English common law since at least the mid-1700s. *Phillips v. Washington Legal Found. Beckford v. Tobin*, 524 U.S. 156, 165, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998) (citing 1 Ves.

Sen. 308, 310, 27 Eng. Rep. 1049, 1051 (Ch. 1749) ("[I]nterest shall follow the principal, as the shadow the body")). The law is well established that if the plaintiff in an interpleader action does not bring the money into court, the plaintiff will be charged with interest on the money. *See Seth Spring & Sons v. S. Carolina Ins. Co.*, 21 U.S. 268 (1823). However, the law is also well established that a plaintiff who deposits money into the court registry at the commencement of the interpleader action should not be required to pay interest on the fund unless he is chargeable with any delays occurring during the litigation. *See Groves v. Sentell*, 66 F. 179, 181 (5th Cir. 1895).

With all the foregoing in mind, the Court turns to the circumstances of this particular case. On November 15, 2011, APMM commenced this interpleader action in the Chancery Court of Lee County, noting in its complaint for interpleader that "[APMM], as a disinterested stakeholder, would show that it has no further claim to the funds to be interpleaded, and is prepared to tender the funds [at issue] unto the Court for the benefit of Defendants herein and all other potential claimants." Pl.'s Compl. [2] ¶ 11. On December 5, 2011, the case was removed to this Court. On December 23, 2011, APMM filed a motion to deposit funds into the Court registry [16]. Noatex filed a response in opposition to the motion contending that APMM could not establish risk of double liability or vexation as is required for a single obligation upon a single fund in interpleader, and APMM filed a reply in support of its position. On February 1, 2012, the Magistrate Judge granted APMM's motion to deposit funds into the Court registry. *See* Ct.'s Order [35]. The next day, APMM deposited the amount disputed, $260,410.15, into the Court registry.[4]

---

[4] The Court notes that Noatex and Kohn Law Group have not argued that APMM should be liable for any delay in initially depositing the amount into the Court registry.

7

On April 12, 2012, the Magistrate Judge entered an Order [56] remanding the case to the Chancery Court of Lee County and directing the Clerk of this Court to refund the money deposited into the Court registry. Accordingly, on May 14, 2012, the Clerk of the Court returned the money deposited into the Court registry to APMM's counsel. Apparently, on September 26, 2012, APMM tendered a deposit of the money to the Chancery Court of Lee County. Check [117-1] at 1. On December 5, 2012, the Magistrate Judge entered an Order [89] vacating its prior remand Order and directing, *inter alia*, that APMM re-deposit into the Court registry the amount at issue in the case, $260,410.15. On December 11, 2012, APMM re-deposited the disputed amount into the Court registry; the remark on the docket indicates "Receipt #MSN100001367 in the amount of $260,410.15 deposited in the Registry of the Court." Thereafter, the amount has been in the Court registry.

Thus, the amount in controversy was in limbo—not in the Court registry—from May 14, 2012 until September 26, 2012. Noatex and Kohn Law Group contend that APMM is liable for 1.5% interest for each month in that four-month period due to APMM's "delay." As support for their position, Noatex and Kohn Law Group cite *Laws v. New York Life Insurance Co.*, 81 F.2d 841 (5th Cir.), *modified on other grounds*, 82 F.2d 811 (5th Cir. 1936), a case brought by an insurance company to determine rights of the party creditors to proceeds from a life insurance policy. *Laws* was a case "in the nature of a bill of interpleader" wherein the plaintiff insurance company continued to use the amount admitted to be due under the subject policy during the suit, rather than depositing the amount into the registry of the court. The *Laws* plaintiff did not file a motion to be discharged as a disinterested stakeholder. The Fifth Circuit found that the plaintiff was liable for the interest that had accrued on the money during the litigation. *Id.* at 843–44. Obviously, *Laws* is distinguished from this case, as here APMM filed a complaint in

8

interpleader, deposited the money at issue into the Court registry after its motion to do so was granted, and twice moved the Court to be discharged as a disinterested stakeholder.[5]

In this case, the Court finds that APMM is not liable for any "delay" during the four months the money would have accrued interest in a court registry. APMM did not seek remand; King Construction did. And during the subject four-month period, APMM had no choice but to wait as Noatex challenged the Magistrate Judge's remand order and attempted to appeal the decision to the Fifth Circuit. APMM was not at fault in receiving the money released to it by the Court; frankly, it had no choice in the matter. Until the case had a forum, the money had to be in the hands of APMM, as the money had been deposited into the interpleader fund by APMM. It is apparent to this Court that during that subject four-month period it was necessary for APMM to await a ruling resolving whether the interpleader matter would be heard in state or federal court to determine whether the money should be deposited into the registry of the Chancery Court of Lee County or this Court. At no point in that four-month period did any of the claimants contend that APMM was liable for interest on the money while it was in limbo. For all the foregoing reasons, the arguments by Noatex and Kohn Law Group in opposition to APMM's motion for discharge are not well taken. The Court finds that discharge is proper at this juncture.

APMM filed a complaint in interpleader, tendered the amount in controversy to the Court registry, and remained neutral as to the proper distribution of the fund. APMM has effectively "relinquishe[d] all interest in" the interpleaded fund and has never contested its obligation to pay the amount in the fund. *See Tittle*, 463 F.3d at 424 (citing *Texas v. Florida*, 306 U.S. at 406–07, 59 S. Ct. 563). All that now remains is the dispute among the claimants (King Construction, Noatex, and Kohn Law Group) over the appropriate allocation of the fund. Because the Court

---

[5] APMM first filed a motion for discharge [39] on February 6, 2012; the motion was never ruled on by the Magistrate Judge because the case was remanded to state court shortly after that motion was filed.

9

finds that APMM has brought a proper § 1335 interpleader action in which it is merely a disinterested stakeholder, APMM's motion for discharge [175] shall be granted.

## C. Conclusion

In sum, Plaintiff Auto Parts Manufacturing Mississippi Inc.'s motion to discharge [175] is GRANTED; Plaintiff Auto Parts Manufacturing Mississippi Inc. is DISCHARGED from the case; and Defendants King Construction of Houston, LLC, Noatex Corporation, and Kohn Law Group, Inc. are enjoined from filing any proceedings against Plaintiff relating to the interpleader fund without an order of this Court allowing the same.

An order in accordance with this opinion shall issue this day.

THIS, the 3 day of March, 2014.

_____
SENIOR JUDGE