IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

AUTO PARTS MANUFACTURING MISSISSIPPI
INC., a Mississippi corporation                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 1:11-CV-00251-GHD-SAA

KING CONSTRUCTION OF HOUSTON,
LLC, a Mississippi limited liability
company; NOATEX CORPORATION,
a California corporation; and KOHN LAW
GROUP, INC., a California corporation                               DEFENDANTS

## MEMORANDUM OPINION DENYING MOTION TO COMPEL ARBITRATION
## FILED BY DEFENDANTS NOATEX CORPORATION AND KOHN LAW GROUP, INC.

Presently before the Court is a motion to compel arbitration [177] filed by Defendants

Noatex Corporation and Kohn Law Group, Inc.[1]  Upon due consideration of all the parties'

arguments, the Court finds that the motion should be denied.

### A. Factual and Procedural History

Auto Parts Manufacturing Mississippi, Inc. ("APMM") contracted with Noatex

Corporation ("Noatex") for Noatex to construct an auto parts manufacturing facility in Guntown,

Lee County, Mississippi, near Toyota Motor Manufacturing, Mississippi, Inc. in Blue Springs,

Mississippi.  Noatex subcontracted with King Construction of Houston, LLC ("King

Construction"), a Mississippi limited liability company, to provide some materials and labor for

the construction.  Noatex alleges that APMM owes it money for goods and services that Noatex

---

[1] The following motions are also pending: Defendant King Construction of Houston, LLC's motion for
summary judgment [145], Defendant Noatex Corporation's motion to dismiss [161], Defendant King Construction
of Houston, LLC's motion to strike [192] response in opposition [178] to its motion for summary judgment,
Defendant Kohn Law Group, Inc.'s motion to dismiss [210], and a motion to appeal the Magistrate Judge's denial of
motion to consolidate cases [227] filed by Defendants Noatex Corporation and Kohn Law Group, Inc.  The Court
will rule on these motions at a later date.

provided to APMM under the contract. Noatex questions some of the invoices submitted to it by King Construction pertaining to the subcontract work. In response to this billing dispute between Noatex and King Construction, King Construction notified APMM on September 23, 2011, pursuant to Mississippi's "Stop Notice" Statute, Mississippi Code § 85-7-181 (the "Stop Notice statute"), that Noatex owed King Construction $260,410.15 and that King Construction was filing a "Laborer's and Materialman's Lien and Stop Notice" in the Chancery Court of Lee County, Mississippi. On the date of notification, APMM owed Noatex $179,707.40. The stop notice bound the disputed funds in APMM's hands to secure invoice claims that Noatex allegedly owed to King Construction. *See* MISS. CODE ANN. § 85-7-181 ("[T]he amount that may be due . . . shall be bound in the hands of such owner for the payment in full . . . ."). King Construction's filing of the stop notice in the *lis pendens* record of the chancery court had the effect of establishing King Construction's lien priority over the property that was the subject of the dispute. *See id.* § 85-7-197. APMM later deposited the $260,410.15 in the registry of the Chancery Court of Lee County.

The dispute resulted in three lawsuits, one of which is the case *sub judice*.[2] APMM filed this interpleader action in the Chancery Court of Lee County to determine ownership of the disputed funds subject to King Construction's stop notice, naming both Noatex and King

_____

[2] The other two lawsuits are a declaratory action and breach of contract action. Noatex filed the declaratory action (No. 3:11-cv-00137) against King Construction and its principal Carl King, challenging the facial constitutionality and constitutionality-as-applied of the Stop Notice statute. The State of Mississippi intervened as a defendant to defend the constitutionality of its statute. United States Magistrate Judge S. Allan Alexander issued a declaratory judgment in favor of Noatex, concluding that § 85-7-181 violated due process and that King Construction's stop notice thus had no effect on the funds APMM had deposited in the Court's registry. On appeal, *inter alia,* the Fifth Circuit Court of Appeals affirmed the Court's determination that Mississippi's Stop Notice statute was facially unconstitutional due to the lack of procedural safeguards that amounted to a facially unconstitutional deprivation of property without due process. This ruling did not include a determination as to any of the rights of the parties to the money frozen by the stop notice. In the other suit (No. 3:11-cv-00152), Noatex sued King Construction for breach of contract in this Court claiming damages in excess of $500,000, but that action was dismissed when this Court granted Noatex's motion to voluntarily dismiss its breach of contract action without prejudice.

2

Construction as defendants. In December of 2011, Noatex removed this interpleader action to this Court. APMM deposited the money into the Court registry. The interpleaded funds are currently impounded in the Court registry pending disposition.

On May 23, 2013, Defendants Noatex and Kohn Law Group filed the present motion to compel arbitration [177], claiming that the issues raised by the amended complaint in interpleader [135] are referable to arbitration under an engagement agreement between Kohn Law Group and Noatex.[3] APMM and King Construction filed responses in opposition,[4] and Noatex and Kohn Law Group jointly filed a reply.[5] The motion is now ripe for review.

## B. Analysis and Discussion

Noatex and Kohn Law Group move the Court to compel arbitration under 9 U.S.C. § 3 of the Federal Arbitration Act (the "FAA"). This matter requires the Court to consider the intersection of interpleader and arbitration and to determine whether to compel arbitration of an engagement agreement between two of the three defendants in this case.

Section 3 provides in pertinent part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.

---

[3] The Court notes that Noatex and Kohn Law Group have also expressed their demand for arbitration of the engagement agreement in numerous other responsive briefs and in their respective motions to dismiss the amended complaint in interpleader [161 & 210].

[4] The Court discharged APMM from the case as a disinterested stakeholder in the Court's previous Order [237] and corresponding memorandum opinion [238].

[5] Before Noatex and Kohn Law Group filed the present motion to compel arbitration [177], Noatex filed two previous motions for arbitration. Noatex (through its counsel Kohn Law Group) filed its first motion for arbitration [139] on April 30, 2013, and its second motion for arbitration [166] on May 20, 2013. The present motion to compel arbitration [177] incorporates all arguments raised in the previous two motions.

In 1925, Congress enacted the FAA in response to the longstanding, widespread judicial hostility to arbitration agreements that existed at English common law and was adopted by American courts. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991); *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 492–93 (5th Cir. 2006).[6]  The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).  However, the FAA

> does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements.  The House Report accompanying the [FAA] makes clear that its purpose was to place an arbitration agreement 'upon the same footing as other contracts, where it belongs,' H.R. REP. No. 96, 68th Cong., 1st Sess., 1 (1924), and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985).  Because "arbitration is a matter of contract," courts must "rigorously enforce arbitration agreements according to their terms." *Hendricks v. UBS Fin. Servs., Inc.*, --- F. App'x ----, 2013 WL 5969888, at *2 (5th Cir. Nov. 11, 2013) (quoting *Am. Express Co. v. Italian Colors Rest.*, — – U.S. ——, ——, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013) (citation and internal quotation marks omitted)).  Thus, arbitration may be compelled only if the parties agreed to arbitrate the dispute in question. *See* 9 U.S.C. § 4; *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. ——, ——, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010); *VT Halter Marine, Inc. v. Wartsila N. Am., Inc.*, 511 F. App'x 358, 360 (5th Cir. 2013) (per curiam) (citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998) (in turn

---

[6] In 1947, Congress reenacted and codified the FAA as Title 9 of the United States Code.

4

citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986))).

Against this backdrop, the Court assesses whether "the parties have agreed to arbitrate a particular claim . . . [by] determin[ing]: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Hendricks*, 2013 WL 5969888, at \*3 (quoting *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (internal quotation marks omitted)).[7] However, first, the Court addresses King Construction's arguments that Noatex and Kohn Law Group have waived their right to arbitration and untimely filed their initial motion for arbitration after the commencement of this interpleader action.

### (1) Waiver of Right to Arbitration

At the outset, the Court addresses King Construction's argument that Noatex and Kohn Law Group waived their right to arbitration by pursuing litigation concerning the same claims they now contend should be referred to arbitration. Noatex and Kohn Law Group argue that despite their involvement in ongoing litigation they have not waived their right to arbitration.

"Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999) (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986) (internal quotation marks omitted)). "There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to

---

[7] If the Court finds that the parties have a valid agreement to arbitrate and that the dispute is within the scope of the arbitration agreement, the Court examines whether any legal constraints foreclose arbitration of those claims. *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). In this case, the parties do not argue that any legal constraints foreclose arbitration. Thus, the Court need not reach this prong of the analysis.

arbitrate has been waived bears a heavy burden." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004) (citing *Subway*, 169 F.3d at 326).

First, the Court must examine whether Noatex and Kohn Law Group substantially invoked the judicial process. To invoke the judicial process, "[t]he party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Subway*, 169 F.3d at 329. "[A] party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate." *Id.* at 328.

King Construction contends that Noatex and Kohn Law Group have invoked the judicial process to resolve its disputes with King Construction by taking such actions as filing the declaratory judgment action against King Construction in this Court for Mississippi's Stop Notice statute to be declared unconstitutional (No. 3:11-cv-137), filing the breach of contract action against King Construction in this Court (No. 3:11-cv-152), removing this interpleader action from the Chancery Court of Lee County to this Court, filing a petition of mandamus and two motions for reconsideration of the denial of same in the Fifth Circuit Court of Appeals (No. 12-60374), and indicating by their behavior a desire to litigate not arbitrate.

The Court agrees. The Fifth Circuit has explained: "In this Circuit, a bright-line rule is inappropriate for deciding whether a party has waived its right to arbitration. Rather, our precedent establishes that '[t]he question of what constitutes a waiver of the right of arbitration depends on the facts of each case.' " *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (quoting *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985)). "A party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009).

Clearly, Noatex (and Kohn Law Group, which has represented Noatex throughout this

6

dispute) undertook extensive litigation seeking a decision on the merits prior to APMM's filing

of its amended complaint in interpleader adding Kohn Law Group as a defendant and mentioning

the existence of the engagement agreement between Noatex and Kohn Law Group. In this

proceeding alone, Noatex (through its counsel Kohn Law Group) filed numerous motions,

responses, and replies,[8] some of which directly referenced the Kohn Law Group lien on any

recovery by Noatex in this dispute and stated that no controversy existed between Noatex and

Kohn Law Group on this point[9].

However, while this case was in limbo pending remand back to this Court, *see* USCA's

Order Withdrawing Dismissal of Mandamus & Remanding Case to District Court; Reopening

Case [73], on September 18, 2012, Kohn Law Group filed a separate action against APMM in

the United States District Court for the Central District of California (No. CV 12-08063-MWF),

characterizing itself as a creditor, Noatex as a debtor, and APMM as the account debtor who

---

[8] Specifically, prior to the filing of APMM's amended complaint in interpleader, Noatex (through its counsel, Kohn Law Group) removed the interpleader action to this Court [1], filed a motion to dismiss the interpleader action and request for oral argument [13], filed a response in opposition [23] to King Construction's motion to consolidate [18] this case with the other related cases, filed a response in opposition [25] to APMM's motion to deposit funds into the Court's registry [16], filed a motion to dismiss [27] King Construction's counterclaim against it and reply [38] in support of the same, participated in a hearing [43] on its motion to dismiss [27] the counterclaim, consented to jurisdiction by the United States Magistrate Judge [44], filed a response in opposition [45] to APMM's motion to dismiss/discharge [39], filed a response in opposition [51] to King Construction's motion to remand [50] the case to state court, filed a motion for reconsideration [57] of the Magistrate Judge's Order remanding the case to state court, filed a second motion for reconsideration [66] on the Court's Orders, filed a motion for clarification [69] of the Court's Order remanding the case to state court and affidavit [70] and reply [77] in support of the same, filed a response in opposition [79] to APMM's motion for leave to file a surrebuttal on APMM's motion for clarification [69], filed a motion to dismiss [99] the interpleader action and reply [117] in support of the same, filed a response in opposition [106] to APMM's motion to amend/correct complaint [104], filed an objection [111] to APMM's exhibits in support of its reply to its motion to amend/correct [104], filed a response in opposition [113] to APMM's motion to substitute party [109], filed a joint status report [115] and a supplemental status report [120], filed a response in opposition [123] to a non-party's motion to intervene [121] as defendant, filed an objection [126] to an exhibit in support of the non-party's reply to its motion to intervene, filed a notice of proof of service by Noatex of King Construction's notice of withdrawal of a subpoena [132] issued to the Mississippi State Board of Contractors, filed a response in opposition [137] to King Construction's motion for discovery conference [129], and filed a motion for an extension of time [138] to file an answer to APMM's amended complaint [135].

[9] *See, e.g.*, Noatex's Mem. Law Supp. Mot. Dismiss Interpleader Action & Distribute Registry Funds [100] at 6, 15–16; Noatex's Reply Supp. Mot. Dismiss Interpleader Action & Distribute Registry Funds [117] at 7–8; Noatex's Mem. Law Supp. Resp. Opp'n to APMM's Mot. Substitute Parties [1145] at 2–3.

allegedly owes Noatex the amount in the interpleader fund in the case *sub judice*. In that California action, which is ongoing, Kohn Law Group asserts a claim to enforce the account debt obligations it alleges that APMM owes to Noatex due to the dispute between Noatex and King Construction. The Central District of California Court stated in its Order dated December 11, 2012:

> Practically speaking, Kohn [Law Group]'s Complaint asks this Court to short-circuit the ongoing Mississippi interpleader action as to this $260,410.15 and award the funds to Kohn [Law Group]. APMM's Motion asks this Court to dismiss (or alternatively to stay) Kohn [Law Group]'s attempt to do so. The Court declines to dismiss the action but will enter a stay . . . until the Mississippi interpleader action is resolved.
>
> . . .
>
> To the extent Noatex is entitled to the $260,410.15, Kohn [Law Group] properly may litigate this lawsuit to collect that amount from APMM. However, given the ongoing Mississippi interpleader action, at this stage the Court will not interject itself to adjudicate the question at the heart of that action – i.e., whether Noatex is entitled to the $260,410.15. A stay of these proceedings in favor of the ongoing Mississippi interpleader action therefore is appropriate. Significantly, if Kohn [Law Group] is joined as a party, the Mississippi court may award Kohn [Law Group] the $260,410.15 as part of the interpleader action. Alternatively, if Kohn [Law Group] is correct, and APMM cannot maintain the interpleader action, then the stay soon may be lifted.

C.D. Cal. Order [99-1] at 3–4, 5. Only after all of this, but a short six days after APMM filed its amended complaint adding Kohn Law Group as a defendant in the case *sub judice*, did Noatex (through its counsel Kohn Law Group) file its first motion for arbitration [139] on April 30, 2013, claiming the issues in the amended complaint were referable to arbitration due to the engagement agreement between Noatex and Kohn Law Group.

However, Kohn Law Group's attempt to prove its allegations to the California district

court, as well as Noatex (and Kohn Law Group)'s act of filing numerous motions, replies, and responses in this Court referring to the Kohn Law Group lien, constitute an invocation of the judicial process. Clearly, Noatex and Kohn Law Group first sought "a decision on the merits before attempting to arbitrate." *See Petroleum Pipe*, 575 F.3d at 480. This Court is not convinced that "[Kohn Law Group], having learned that the [California] district court was not receptive to its arguments, should be allowed a second bite at the apple through arbitration." *See id.* at 482. To hold otherwise would encourage litigants to delay moving to compel arbitration until they could ascertain "how the case was going in federal district court before deciding whether [they] would be better off there or in arbitration." *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009) (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)). "In essence, [Kohn Law Group] attempted to "play 'heads I win, tails you lose,' which is the worst possible reason for failing to move for arbitration sooner than it did." *See In re Mirant Corp.*, 613 F.3d at 590 (citing *Hooper*, 589 F.3d at 922). It is clear to this Court that Kohn Law Group attempted to game the system by first seeking a decision on the merits in California district court while keeping the arbitration option as a backup plan in case the effort failed. *See In re Mirant Corp.*, 613 F.3d at 590. "Any attempt to go to the merits and to retain still the right to arbitration is clearly impermissible." *Miller Brewing Co.*, 781 F.2d at 498. For all the foregoing reasons, the Court finds that Noatex and Kohn Law Group have invoked the judicial process.

"In addition to the invocation of the judicial process, there must be prejudice to the party opposing arbitration before [the Court] will find that the right to arbitrate has been waived." *See id.* at 591 (citing *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009)). "Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position."

9

*Id.* (citing *Nicholas*, 565 F.3d at 907). Although Noatex and Kohn Law Group argue they timely filed their first motion for arbitration six days after APMM filed its amended complaint in interpleader adding Kohn Law Group as a defendant, the Court disagrees. As noted above, Noatex and Kohn Law Group waited to move to compel arbitration until Kohn Law Group was assured it could not get the result it wanted in California district court. Under these circumstances, Noatex and Kohn Law Group's actions did not constitute a timely demand for arbitration. Finally, both APMM and King Construction suffered considerable litigation expenses and prejudice to their legal positions by the delay of the resolution of this case by the actions of Noatex and Kohn Law Group as described above. For all these reasons, the Court finds that Noatex and Kohn Law Group have waived their right to arbitration. However, even assuming, *arguendo*, that Noatex and Kohn Law Group have not waived their right to arbitration, the motion to compel arbitration must be dismissed on other grounds, as shown below.

### (2) Timeliness of Motion for Arbitration

The Court next addresses King Construction's argument that Noatex and Kohn Law Group cannot compel arbitration after the commencement of the interpleader action. The Court normally determines the rights of the parties and the priority of claims in an interpleader action as they existed at the time the interpleader action was commenced. *White v. FDIC*, 19 F.3d 249, 252 (5th Cir. 1994) ("[A]ctivity subsequent to the initiation of an interpleader action is normally immaterial in determining which claimant has a superior right to the interpleader fund."); *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 391 F. Supp. 2d 541, 563–64 (S.D. Tex. 2005 Aug. 1, 2005). *See also Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1369–1370, 1371 (9th Cir. 1997) ("The priority of claims to the res in an interpleader action must normally be determined at the time the action is initiated, and cannot be altered by events after the interpleader fund

becomes viable."); *Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143–44 (2d Cir. 1988) ("[W]here an interpleader action is brought to have the court determine which of two parties has priority with respect to the interpleader fund, the court should normally determine priority as of the time the fund was created."). As stated by the Ninth Circuit, "[a]s the entire point of an interpleader action is to resolve then competing rights and claims, it makes perfect sense that the action itself cannot be used as a vehicle for further jockeying for claim position." *Ponsoldt*, 118 F.3d at 1370. The date a statutory interpleader is "commenced" is the date when the interpleader fund is deposited with the Court. *Id.* at 1369; *Avant Petroleum*, 853 F.2d at 143, 144; *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976) (citing 28 U.S.C. §1335) ("[T]he deposit requirement is a jurisdictional prerequisite to a suit under the interpleader statute.)). The language of 28 U.S.C. § 1335(a)(2) reflects this point: "The district courts shall have original jurisdiction of any civil action of interpleader . . . if . . . the plaintiff has deposited such money . . . into the registry of the court . . . ."

Such principles are straightforward and clear. However, the case *sub judice* is anything but straightforward and clear. As such, the issue presented in this case does not lend itself to an easy answer. However, one thing is certain: Noatex's and Kohn Law Group's request for arbitration of their engagement agreement was brought after the commencement of the interpleader action. The commencement of the interpleader action was either February 2, 2012, the date the funds were initially deposited into the Court registry, or December 11, 2012, the date the funds were re-deposited into the Court registry, following the Magistrate Judge's *sua sponte* recall of her Order remanding the case to state court (and coincidentally, the date the California district court entered its Order staying Kohn Law Group's suit against APMM pending a resolution of this interpleader action). Noatex (through its counsel Kohn Law Group) initially

11

filed its motion for arbitration of the engagement agreement on April 30, 2013. Even taking into account the initial motion for arbitration was filed only six days after APMM filed its amended complaint in interpleader where it named Kohn Law Group as a defendant to the action for the first time, the initial motion for arbitration was still filed after the commencement of interpleader, and after the amended complaint. Thus, under the principles recounted above, Noatex and Kohn Law Group had not preserved their right to arbitration at the time the interpleader was commenced. *See generally* 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: Civ. 3d § 1714 (3d ed. 2001).

Based on all the foregoing, the Court finds that Noatex's and Kohn Law Group's motion for arbitration was untimely filed after the commencement of interpleader and is dismissed on this ground. However, even assuming, *arguendo*, that the motion for arbitration was not untimely filed and may be considered, the motion must be dismissed on other grounds, as shown below.

### (3) Arbitration Agreement

The Court now turns to the merits of the motion to compel arbitration and whether the parties have agreed to arbitrate this particular claim by determining "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Hendricks*, 2013 WL 5969888, at *3 (quoting *Pers. Sec. & Safety Sys. Inc.*, 297 F.3d at 392); *see Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003). In deciding these issues, the Court applies "generally-applicable rules of contract interpretation and enforcement." *See Baldwin v. Cavett*, 502 F. App'x 350, 353 (5th Cir. 2012) (per curiam). *See also* 9 U.S.C. § 2; *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). Courts must

"apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but . . . do not apply this policy when determining whether a valid agreement exists." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008); *see Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) ("While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate.")); *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002) ("[W]e will read the reach of an arbitration agreement between parties broadly, but that is a different matter from the question of who may invoke its protections."); *see Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989).[10] The determination of whether a party is bound by an arbitration agreement is included within the broader issue of whether the parties agreed to arbitrate. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003) (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 95 (2d Cir. 1999)). "[P]arties may specify <u>with whom</u> they choose to arbitrate their

---

[10] The Court notes that to the extent Noatex and Kohn Law Group argue that the arbitrator should determine whether this dispute is within the scope of the arbitration agreement, this argument is not well taken. In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964), the Supreme Court distinguished questions of arbitrability, which are for the district court to decide, from questions of procedure, which belong to the arbitrator even if they "grow out of the dispute and bear upon its final disposition." *Id.* at 557–58, 84 S. Ct. 909. Moreover, in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002), the Court states: "[W]hether the parties have submitted a particular dispute to arbitration, i.e., the '<u>question of arbitrability</u>,' is 'an issue for judicial determination' [u]nless the parties clearly and unmistakably provide otherwise." *Id.* at 83, 123 S. Ct. 588. The Supreme Court emphasized the breadth of the scope of procedural issues compared with the scope of arbitrability issues, noting that unless the parties clearly and unmistakably provide otherwise, the arbitrability applies to "the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they agreed that an arbitrator would do so, and consequently, where reference of the gateway dispute to the courts avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Id.*, 123 S. Ct. 588. Therefore, the Court, not the arbitrator, is to determine "gateway matters," i.e., (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement covers the dispute before the court. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003); *Dean Witter*, 537 U.S. at 83, 123 S. Ct. 588; *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 354 (5th Cir. 2003).

disputes." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010). However, "nothing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002). With this standard in mind, the Court now examines the two prongs of the analysis: whether these parties agreed to arbitrate this dispute, and if so, whether this dispute is within the scope of the arbitration agreement.

### (a) Agreement to Arbitrate

As mentioned above, "[t]he purpose of the FAA is to give arbitration agreements the same force and effect as other contracts—no more and no less." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citing 9 U.S.C. § 2); *see Pennzoil Exploration and Prod. Co. v*, 139 F.3d at 1064 ("[a]rbitration is a matter of contract between the parties"). Thus, in determining whether parties agreed to arbitrate a certain matter, the Court must apply the contract law of the particular state that governs the agreement. *See Washington Mut. Fin. Grp., LLC*, 364 F.3d at 264 (citing *First Options of Chi., Inc.*, 514 U.S. at 944, 115 S. Ct. 1920).

The parties here dispute whether California law or Mississippi law governs the subject arbitration agreement. "Under the applicable conflicts of law principle in interpleader actions, a federal court applies the choice of law rules of the state in which it is sitting." *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 461 n.9 (5th Cir. 1971) (citing *Griffin v. McCoach*, 313 U.S. 498, 503, 61 S. Ct. 1023, 85 L. Ed. 1481 (1941); 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE P 22.14(5) (2d ed. 1969)). Thus, in this interpleader action, the Court applies the choice of law rules of Mississippi, the forum state, which follows the choice of law rules set forth in the Restatement (Second) of Conflicts of Laws. *See Ellis v. Trustmark*

14

*Builders, Inc.*, 625 F.3d 222, 225–26 (5th Cir. 2010). The Restatement provides that when the contract contains a choice of law provision, the laws of the chosen state are applied unless either

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 187 (1971).

The engagement agreement provides that it "shall be construed and enforced entirely under the laws of California, except to the extent that California's principles of conflicts of laws might otherwise require applying the substantive law of any other jurisdiction." Engagement Agreement [139-1] at 5. California, the chosen state, has a substantial relationship with the parties to the engagement agreement and the engagement: Kohn Law Group is a California corporation, its principal place of business in California, and Noatex is a California corporation, its principal place of business in California. The parties have identified no factor that would indicate that application of California law to determine this issue would be contrary to any fundamental policy of Mississippi. Thus, this Court, though sitting in diversity in a Mississippi court, must follow California law in determining whether the parties agreed to arbitrate this dispute.[11]

---

[11] The Court notes that King Construction's argument that the center-of-gravity test must be applied in determining this issue is without merit. The center-of-gravity test comes into play when there is not an effective choice of law provision in an agreement. *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 959–60 (Miss. 1999). Because the subject arbitration agreement contains a choice of law provision, there is no need to apply the center-of-gravity test to determine which state's law applies to these issues. *See Sheppard Pratt Physicians, P.A. v. Sakwa*, 725 So. 2d 755, 757 (Miss. 1998) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)).

Noatex and Kohn Law Group argue in their motion to compel arbitration that the issues raised by the amended complaint for interpleader [135] are referable to arbitration under the engagement agreement between Kohn Law Group and Noatex and that "[u]nder the circumstances of this action for interpleader, [King Construction] must also arbitrate its claim of asserted equitable rights to the interpleader fund." *See* Mem. Br. Supp. First Mot. Stay Pending Arbitration [141] at 1. However, it is apparent that the four corners of the agreement do not bind King Construction to arbitrate this dispute. *See Bridas*, 345 F.3d at 355.

Although Noatex and King Construction have had business dealings with respect to the construction project at issue, the Court does not have before it any written agreement containing an arbitration agreement signed by King Construction <u>and</u> Noatex and Kohn Law Group. The subject arbitration agreement is contained in the engagement agreement between Noatex and Kohn Law Group only. It is undisputed that King Construction did not sign the engagement agreement that contains the subject arbitration clause, nor is King Construction mentioned in the arbitration clause. Although California courts "have consistently found a strong public policy favoring arbitration agreements, . . . there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . . " *Goldman v. SunBridge Healthcare, LLC*, No. C069970, 220 Cal. App. 4th 1160, 1169 (Cal. Ct. App. 3d Dist. Sept. 27, 2013) (internal quotation marks and citations omitted); *see Bridas*, 345 F.3d at 355 ("Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement."). "Generally, a person who is not a party to an arbitration agreement is not bound by it." *Goldman*, 220 Cal. App. 4th at 1169.

King Construction is a nonsignatory to the subject arbitration agreement. Fifth Circuit "jurisprudence recognizes an important distinction between signatories and nonsignatories to an

arbitration agreement." *See Baldwin*, 502 F. App'x at 353; *see also Westmoreland*, 299 F.3d at 465. When determining whether and to what extent a nonsignatory is bound by an arbitration agreement, the Court must apply the federal substantive law of arbitrability. *See DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 314 n.4 (5th Cir. 2011) (citing *Washington Mut. Fin. Grp., LLC*, 364 F.3d at 267 n.6).

The subject arbitration agreement describes the framework for the relationship between two parties: Noatex and Kohn Law Group. Considering that Noatex retained Kohn Law Group to represent Noatex in the dispute with King Construction, *see* Engagement Agreement [139-1] at 1, King Construction is necessarily mentioned in the engagement agreement itself—however, only peripherally. The engagement agreement provides that "any dispute arising from this engagement shall be resolved by binding arbitration," *id.* at 5, but does not state that any such arbitration would involve or be binding upon King Construction. The Court finds that by the plain terms of the agreement, Noatex and Kohn Law Group have agreed to arbitrate a dispute, but that King Construction has not.

In *Del E. Webb Construction v. Richardson Hospital Authority*, 823 F.2d 145 (5th Cir. 1987), the hospital authority contracted with an architect to supervise a construction project and that contract provided for arbitration. *Id.* at 146. The hospital authority then signed two other contracts with the construction contractor which also contained arbitration clauses. *Id.* at 147. The Fifth Circuit held that the architect could not be compelled to participate in arbitration between the hospital authority and the construction contractor, because the architect and construction contractor had "not agreed to arbitrate disputes between them." *Id.* at 148. Similarly, in *Zimmerman v. International Companies & Consulting, Inc.*, 107 F.3d 344 (5th Cir. 1997), the Fifth Circuit held that a defendant-insurer with the contractual right to arbitrate with

17

the insured cannot force a plaintiff who is not a party to the contract to arbitrate. *Id.* at 345–46. In this case, nonsignatory King Construction is not a party to the subject arbitration agreement, and the engagement agreement itself does not signal an intention to bind King Construction to its terms and thus to arbitrate this dispute.

"Arbitration agreements apply to nonsignatories only in rare circumstances." *Bridas*, 345 F.3d at 358. But "[w]hen the [arbitration] agreement's terms do not expressly state whether a signatory may be compelled to arbitrate with a nonsignatory," as here, the Court "draw[s] on various theories of contract and agency law, including equitable estoppel, to determine a nonsignatory's rights and duties under an arbitration clause." *See Sherer*, 548 F.3d at 381–82; *see also Qualcomm, Inc. v. Am. Wireless Licenter Grp., LLC*, 980 So. 2d 261, 269 (Miss. 2007). *Accord Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006); *Bridas*, 345 F.3d at 356.[12] "Where 'some written agreement to arbitrate' exists, federal courts have recognized '[s]ix theories for binding a nonsignatory to an arbitration agreement . . . : (a) incorporation by reference;[13] (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel;

---

[12] Other circuits also approve the use of equitable estoppel to bind a non-party to an arbitration agreement. *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 n.9 (5th Cir. 2006) (citing *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756–58 (11th Cir. 1993); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir. 1988); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (11th Cir. 1984)).

[13] Although Noatex and Kohn Law Group apparently do not attempt to argue that incorporation by reference would bind King Construction to this arbitration agreement, the Court notes that this theory would not bind King Construction to arbitrate the engagement agreement. It would be different, if, for instance, APMM, as principal, and Noatex, as primary contractor, had agreed to arbitrate any dispute concerning their principal/contractor contract, and the contract between King Construction and Noatex referenced said arbitration agreement. In that situation, King Construction could be bound by the terms of the arbitration agreement between the contractor and principal. *See JS & H Constr. Co. v. Richmond Cnty. Hosp. Auth.*, 473 F.2d 212, 216 (5th Cir. 1973) (holding subcontractor bound by arbitration provision incorporated by reference from the general conditions of contract between primary contractor and principal). In *JS*, a subcontractor entered into an agreement with the prime contractor expressly incorporating by reference the general conditions of the prime contract, which included an arbitration agreement between the parties. In that case, the subcontractor was bound by the arbitration agreement—even though it was between the contractor and the principal and not the subcontractor—because of the strong policy favoring arbitration and the subcontractor's express agreement to incorporate the general conditions of the contractor/principal contract. *Id.* at 214–16. The Fifth Circuit based its holding in part on "[t]he . . . undisputed

and (f) third-party beneficiary.' " *The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd.*, 523 F.3d 528, 536–37 (5th Cir. 2008) (quoting *Hellenic Inv. Fund, Inc.*, 464 F.3d at 517 (in turn citing *Bridas*, 345 F.3d at 355–56)).[14]

Noatex and Kohn Law Group advance only one of these six theories in support of its position: estoppel. The Court notes that the application of estoppel to compel arbitration is governed by federal law in this case. *See Washington Mut. Fin. Grp., L.L.C.*, 364 F.3d at 267 n.6. Direct benefits estoppel involves nonsignatories who, during the life of the contract, have embraced the contract despite their nonsignatory status, and benefited therefrom, but then, during litigation, attempted to repudiate the arbitration clause in the contract. *Hellenic Inv. Fund, Inc.*, 464 F.3d at 517–18. "A non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract;[15] or (2)

---

proposition . . . that as a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where . . . the provision to which reference is made has a reasonably clear and ascertainable meaning." *Id.* at 215.

In this case, the Noatex/King Construction contractor/subcontractor relationship ended prior to King Construction's filing of the stop notice in September of 2011. Subsequently, Kohn Law Group and Noatex signed the engagement agreement providing that Kohn Law Group would represent Noatex in the dispute with King Construction. That engagement agreement is dated October 5, 2011. Thus, no evidence before the Court suggests that a contract between Noatex and King Construction incorporated by reference the arbitration agreement between Noatex and Kohn Law Group. Therefore, even if this theory had been raised, it would not be tenable in this case to bind King Construction to arbitrate the engagement agreement between Noatex and Kohn Law Group.

[14] The Court notes that Noatex and Kohn Law Group do not argue that King Construction is bound to arbitrate under the theories of incorporation by reference, assumption, agency, veil-piercing/alter ego, or third-party beneficiary.

[15] Noatex and Kohn Law Group do not appear to argue the "knowingly exploited" theory of direct benefits estoppel. However, the Court notes as follows. "To satisfy the knowledge requirement, the case law requires that the non-signatory have had actual knowledge of the contract containing the arbitration clause." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010); *see Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 515–16, 519 (5th Cir. 2006) (applying direct benefits estoppel to a nonsignatory that knew of the contract to which it was later bound); *Bridas*, 345 F.3d at 361–62. *See also Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, U.S., 9 F.3d 1060, 1064 (2d Cir. 1993) (finding that a nonsignatory was bound when it received a copy of the agreement containing an arbitration clause). King Construction could not have had any knowledge of the engagement agreement between Noatex and Kohn Law Group until after King Construction filed its stop notice against Noatex, because the engagement agreement was dated subsequent to the date that stop notice was filed. This means that King Construction could not have had knowledge of the engagement agreement at the time King

by seeking to enforce the terms of that contract or <u>asserting claims that must be determined by reference to that contract</u>." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (emphasis added). Apparently, Noatex and Kohn Law Group argue that nonsignatory King Construction is estopped from denying that it is bound to arbitration of the engagement agreement, because King Construction has embraced the engagement agreement by asserting claims to the interpleader fund that must be determined by reference to the engagement agreement—because the interpleader action is based on the engagement agreement or because the interpleader action and engagement agreement are inextricably intertwined. For the reasons that follow, the Court finds that this argument has no merit.

In *Bridas*, the Fifth Circuit declined to apply direct benefits estoppel, stating that "it is undisputed that the [nonsignatory] has not sued [the signatory] under the agreement [containing the arbitration clause]." *Hellenic Inv. Fund, Inc.*, 464 F.3d at 518 (citing *Bridas*, 345 F.3d at 362). Similarly, in *Peden v. Peterson*, the Fifth Circuit found that the agreement containing the arbitration clause was separate from the agreement under which the party sought relief and thus that the party was not bound to arbitrate its claims. *See* 73 F. App'x 83, 2003 WL 21757279, at *1 (5th Cir. June 25, 2003).

The interpleader dispute does not seek to enforce a specific term in the engagement agreement, so this version of direct benefits estoppel applies only if the interpleader dispute can

---

Construction entered into the contractor/subcontractor relationship with Noatex, because the engagement agreement did not exist at that time. Because no evidence supports a conclusion that King Construction knew of the terms of the engagement agreement between Noatex and Kohn Law Group, King Construction could not have the knowledge necessary to support the "knowingly exploited" theory of direct benefits estoppel. *See Noble Drilling Servs., Inc.*, 620 F.3d at 471–74. Further, in no way have Noatex and Kohn Law Group shown that King Construction benefited from their engagement agreement. How could it, when the engagement agreement was entered into so that Kohn Law Group could "represent [Noatex] as counsel in [the] dispute with King Construction"? The engagement agreement was obviously <u>against</u> King Construction's interests, <u>not</u> for its benefit. Thus, even if the "knowingly exploited" theory had been argued, it would not bind King Construction to the arbitration agreement.

be determined solely by reference to the engagement agreement. The amended complaint in interpleader [135] names King Construction, Noatex, and Kohn Law Group as defendants. The amended complaint alleges that "[Kohn Law Group] . . . has done business in this State pursuant to an agreement with Noatex performed in part in this State, via its principal, Robert E. Kohn, who has appeared in Mississippi federal district court representing Noatex in related proceedings concerning the interpleaded funds and the construction projects giving rise to the dispute between Noatex and King Construction." APMM's Am. Compl. [135] ¶ IV. The amended complaint refers to the "dispute between Noatex and King Construction" and references Kohn Law Group's representation of Noatex. The amended complaint further alleges that "[j]oinder of [Kohn Law Group] has been ordered by this Court . . . ." *Id.* Kohn Law Group is next mentioned in paragraph IX, which alleges that Kohn Law Group filed a lawsuit against APMM in the United States District Court for the Central District of California, "seeking to enforce alleged account debt obligations that Noatex asserts APMM owes to Noatex" under the California Commercial Code, and further alleges that that complaint in California district court "seeks judgment in the principal amount of $260,410.15, which equals the sum of the interpleaded funds, as payment of attorney's fees [Kohn Law Group] alleges Noatex owes it pursuant to [the subject engagement agreement between Noatex and Kohn Law Group]." *Id.* ¶ IX. Finally, the amended complaint alleges that "[e]ach of the Defendants claims entitlement to the interpleaded funds." *Id.* ¶ X.

By filing this interpleader action, tendering the amount at issue to the Court registry, conceding liability up to the amount in the interpleader fund, remaining neutral as to the proper distribution of the interpleader fund, and ultimately, being discharged as a plaintiff, APMM is effectively removed from the dispute. *See Rhoades v. Casey*, 196 F.3d 592, 600 n.8 (5th Cir.

1999). All that remains is a dispute among King Construction, Noatex, and Kohn Law Group over the appropriate allocation of the interpleader fund. King Construction's claim to the interpleader fund rests on the contractor/subcontractor relationship it had with Noatex during this construction project, not the engagement agreement between Noatex and Kohn Law Group that contains the arbitration provision. The interpleader action rests on the circumstances of the contractor/subcontractor relationship between Noatex and King Construction and not on Noatex's retainer of Kohn Law Group to represent Noatex in this very dispute. Any lien by Kohn Law Group on any award or settlement issued to Noatex from this dispute is secondary to the dispute between King Construction and Noatex over the interpleader fund. Further, Noatex and Kohn Law Group have not established that they have adverse interests at this point in the litigation. Noatex and Kohn Law Group have repeatedly stated up to this point that they have aligned interests in the dispute. This is further evidenced by the fact that the two parties have jointly filed motion papers.[16]

Because the nonsignatory, King Construction, does not claim rights to the interpleader fund premised in any part on the engagement agreement between Noatex and Kohn Law Group, and because the amended complaint in interpleader itself does not rely on the engagement agreement, direct benefits estoppel does not apply in this case. *See Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 348–49 (5th Cir. 2002) (claims which merely "touch matters covered by the [subject contract] based upon a broad construction of the arbitration clause" do not demonstrate reliance on the written agreement containing the arbitration clause to assert claims). Accordingly, King Construction is not bound by the arbitration agreement in the engagement

---

[16] In fact, Kohn Law Group has no independent entitlement to the interpleader fund without a declaration that Noatex is entitled to the fund. Thus, Kohn Law Group's lien against Noatex is derivative of Noatex's claim. For these reasons, Noatex and Kohn Law Group are at present on the same side of the dispute.

agreement between Noatex and Kohn Law Group under direct benefits estoppel.

Despite their colorful arguments to the contrary, Noatex and Kohn Law Group, as signatories to the arbitration agreement, are attempting to hold nonsignatory King Construction liable—not pursuant to any duties imposed by Kohn Law Group's lien for legal service fees against Noatex pursuant to their engagement agreement—but rather pursuant to duties imposed by the contract between Noatex and King Construction arising from their contractor-subcontractor relationship. That dispute has already found a vehicle in this interpleader action, and for reasons stated above in the section concerning the timeliness of the motion for arbitration, the dispute is not subject to arbitration.

The Court thus concludes that the theory of direct benefits estoppel is not applicable to this case, and King Construction is not obligated to arbitrate its claim to the interpleader fund. *See Noble Drilling Servs., Inc.*, 620 F.3d at 471–75; *Vinewood Capital, LLC. v. Dar Al-Maal Al-Islami Trust*, 295 F. App'x 726, 729 (5th Cir. 2008) (per curiam).

For all the foregoing reasons, the Court finds King Construction is neither a party to, nor is bound by, the subject arbitration agreement under ordinary contract law. *See Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 560 (5th Cir. 2011); *DK Joint Venture 1*, 649 F.3d at 312; *Noble Drilling Servs., Inc.*, 620 F.3d at 473. *See also Waffle House*, 534 U.S. at 289, 122 S. Ct. 754 (nothing in the FAA "authorizes a court to compel arbitration . . . by any parties . . . that are not already covered in the agreement"); *Will–Drill Res., Inc.*, 352 F.3d at 218 ("[I]t is clear that because arbitration is a matter of contract, where a party contends that it has not signed any agreement to arbitrate, the court must first determine if there is an agreement to arbitrate before any additional dispute can be sent to arbitration."); *Bel–Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,

23

363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) ("Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so.")). Thus, the motion to compel arbitration is denied on this ground. Only Noatex and Kohn Law Group have agreed to arbitration of a dispute arising from their engagement agreement; King Construction has not agreed to arbitration of any such dispute. However, even assuming, *arguendo*, that Noatex and Kohn Law Group were able to bind King Construction to arbitration, the motion to compel arbitration must also be denied, because this dispute is not within the scope of the arbitration agreement.

### (b) Scope of Arbitration Agreement

"The FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration . . . ." *Waffle House*, 534 U.S. at 289, 122 S. Ct. 754. Courts "must examine with care the complaints seeking to invoke their jurisdiction in order to separate arbitrable from nonarbitrable claims. A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration." *KPMG LLP v. Cocchi*, ─── U.S. ───, ───, 132 S. Ct. 23, 24 (2011). "Absent some ambiguity in the agreement, however, it is the language of the contract that defines the scope of disputes subject to arbitration." *Waffle House*, 534 U.S. at 289, 122 S. Ct. 754; *see Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties.").

The FAA enables arbitration of a dispute between Kohn Law Group and Noatex arising from the engagement, but does not expand the range of claims subject to arbitration beyond what is provided for in the arbitration agreement between Kohn Law Group and Noatex. *See Waffle*

24

*House*, 534 U.S. at 293 n.9, 122 S. Ct. 754. The subject arbitration agreement provides in pertinent part that "any dispute arising from this engagement shall be resolved by binding arbitration . . . ." *See* Engagement Agreement [139-1] at 5. The phrase "arising from" sweeps broadly in scope. *See Stolt–Nielsen S.A.*, 559 U.S. at 693, 130 S. Ct. 1758; *Green Tree Fin. Corp.*, 539 U.S. at 445, 123 S. Ct. 2402. However, "the breadth of that scope is limited by the language in the remainder of the [arbitration] provision." *See Tittle v. Enron Corp.*, 463 F.3d 410, 420 (5th Cir. 2006). The phrase "arising from" in the subject arbitration provision is always followed by "from this engagement." *See* Engagement Agreement [139-1] at 5 ("[A]ny action or arbitration arising from this engagement . . . . [A]ny dispute arising from this engagement . . . . ").

Noatex and Kohn Law Group have presented the Court with a heavily redacted copy of the engagement agreement, contending that the redacted portions of the agreement are not pertinent to this issue. *See* Kohn Decl. [140] ¶ 2. In viewing the portions of the engagement agreement before the Court, the Court finds that by the plain terms of the engagement agreement, the "engagement" is Noatex's retainer of Kohn Law Group "to represent the Client [Noatex] as counsel in a dispute with [King Construction]." *Id.* at 1. By the engagement agreement's plain terms, the arbitration provision refers to any dispute arising from <u>Noatex's retainer of Kohn Law Group</u> to represent it in the King Construction dispute. It does not refer to any dispute arising from the action between King Construction and Noatex, however. Thus, interpreting the arbitration clause to encompass any such disputes would be inaccurate.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Tittle*, 463 F.3d at 421 (quoting *Steelworkers*, 363 U.S. at 582, 80 S. Ct. 1347) (internal quotation marks omitted)). Therefore, having determined that the scope of the

25

arbitration clause extends only to disputes arising from Noatex's engagement of Kohn Law Group to represent it in the dispute with King Construction, the Court must now decide whether the dispute in the instant case falls within this scope. *See id.* That is, the Court must determine whether the interpleader action "arises from the engagement" of Kohn Law Group to represent Noatex in the dispute with King Construction.

Upon due consideration of the parties' arguments, the Court finds that the interpleader action does not arise from the engagement. Because the arbitration agreement's language limits its applicability to disputes arising from Noatex's engagement of Kohn Law Group, the arbitration agreement hypothesizes a dispute between the Firm, Kohn Law Group, and the Client, Noatex. Noatex's and King Construction's claims to the interpleader fund rest on the contractor/subcontractor relationship Noatex and King Construction had during the subject construction project, not on the terms of the engagement agreement between Noatex and Kohn Law Group that contain the arbitration provision. Indeed, only Kohn Law Group's claim to the interpleader fund—which is derivative of Noatex's claim—rests on the terms of the engagement agreement between it and Noatex that contain the arbitration provision.

The engagement agreement leaves open the possibility that arbitration may be needed to resolve "any dispute arising from th[e] engagement" of Kohn Law Group, *see* Engagement Agreement [139-1] at 1, "to represent [Noatex] as counsel in a dispute with [King Construction]," *id.* at 5. This is the connection to the current dispute—Kohn Law Group is representing Noatex and has "a lien upon any claim arising from the subject of this engagement." *See id.* at 1, 4 (emphasis added). The arbitration agreement does not state that any dispute or controversy arising in connection with the subject matter of the agreement would be subject to arbitration.

Any arbitration of the subject engagement agreement is only peripherally related to the dispute in this case. Logically, Kohn Law Group's claim to the interpleaded fund <u>derives from</u> Noatex's claim to the interpleaded fund. The engagement agreement appears by its terms to be a contingency agreement between counsel and client. *See id.* at 4 ("To secure the Client's [Noatex's] obligations to the Firm [Kohn Law Group], it is further agreed that the Firm [Kohn Law Group] shall have a lien upon any claim arising from the subject of this engagement, including without limitation any money, property[,] or other things of value received or to be received (directly or indirectly) pursuant to any settlement or compromise based on such a claim or any award made or to be made in the Client's [Noatex's] favor by any tribunal based on such a claim, including any payment or award of costs or attorney fees."). By its terms, Kohn Law Group's lien is <u>contingent upon</u> Noatex's receipt of money etc. received pursuant to settlement or compromise by any tribunal based on such a claim including any payment or award of cost or attorney's fees.

Much has been argued by the parties, but let us be clear on this point: Unless Noatex is found to have rights in the interpleader fund, Kohn Law Group will have no rights in the interpleader fund. It follows, then, that unless this Court determines that Noatex is entitled to all or part of the interpleader fund, there is no need to arbitrate any issue related to the engagement agreement between Noatex and Kohn Law Group.

Of course, the mere possibility that "piecemeal litigation may result" is not reason enough to deny a motion to compel arbitration as to those parties who have agreed to arbitrate and staying the action with respect to others who have not agreed to arbitrate. *See, e.g., Saucier v. Aviva Life and Annuity Co.*, 701 F.3d 458, 463 (5th Cir. 2010). However, the Court finds no present arbitrable dispute between Noatex and Kohn Law Group. The only present dispute is

between Noatex and King Construction, and the scope of the arbitration clause does not encompass such a dispute. Kohn Law Group's claimed lien as to any award or settlement of the interpleader fund in Noatex's favor merely creates the possibility of a hypothetical future dispute, not a present dispute. *See generally Tittle*, 463 F.3d at 425. Permitting this interpleader action to go forward would not undermine any future arbitration proceedings between Noatex and Kohn Law Group or thwart the federal policy in favor or arbitration. On the other hand, staying the case pending arbitration proceedings between Noatex and Kohn Law Group would allow the arbitrator to determine whether Kohn Law Group is entitled to enforce a lien against Noatex **if** Noatex is entitled to all or part of the interpleader fund, and would then necessitate this Court lifting the stay and determining whether Noatex is, in fact, entitled to all or part of the interpleader fund. The proper course of action for this Court is to first determine the rights of King Construction and Noatex to the interpleader fund, and **then**, if Noatex is determined to be entitled to all or part of the interpleader fund, to allow Noatex to re-urge its motion to compel arbitration.

Because the motion to compel arbitration was untimely filed after the commencement of this interpleader action, because the parties did not agree to arbitrate this dispute, and because the dispute is not within the scope of the arbitration agreement, the motion to compel arbitration [177] filed by Noatex and Kohn Law Group shall be dismissed without prejudice. If the Court ultimately determines that Noatex is entitled to the interpleader fund, then the motion to compel arbitration of the engagement agreement between the two may be re-urged, and the Court will consider the motion anew.

## C. Conclusion

In sum, the motion to compel arbitration [177] filed by Defendants Noatex Corporation and Kohn Law Group, Inc. is **DENIED WITHOUT PREJUDICE**.

An order in accordance with this opinion shall issue this day.

THIS, the 17 day of March, 2014.

SENIOR JUDGE