IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

AUTO PARTS MANUFACTURING MISSISSIPPI
INC., a Mississippi corporation                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 1:11-cv-00251-GHD-SAA

KING CONSTRUCTION OF HOUSTON,
LLC, a Mississippi limited liability
company; NOATEX CORPORATION,
a California corporation; and KOHN LAW
GROUP, INC., a California corporation                              DEFENDANTS

## **MEMORANDUM OPINION**

Presently before the Court is Movant Auto Parts Manufacturing Mississippi, Inc. ("APMM")'s[1] motion for the imposition of coercive and compensatory sanctions [328] against Respondent Kohn Law Group, Inc. ("Kohn Law Group").[2] Kohn Law Group has filed a response, and APMM has filed a reply. In addition, before the Court is Kohn Law Group's motion for a stay pending appeal of any compulsory or coercive sanctions that may be ordered [346]. APMM has filed a response to that motion, and Kohn Law Group has filed a reply. Both of these motions are ripe for review. Upon due consideration, the Court is ready to rule.

### *I.  Factual and Procedural History*

Although this complex interpleader action has been closed by reason of settlement since October 20, 2014, the Court finds it necessary to set forth the factual and procedural

---

[1] The Court notes that Auto Parts Manufacturing Mississippi Inc. was terminated as a party plaintiff in this cause on March 3, 2014.

[2] The Court notes that Kohn Law Group, Inc. was terminated as a party defendant in this cause on March 24, 2014.

background.[3]

APMM entered into a contract with Noatex Corporation ("Noatex") for Noatex to construct an auto parts manufacturing facility in Guntown, Lee County, Mississippi, near Toyota Motor Manufacturing, Mississippi, Inc. in Blue Springs, Mississippi. Noatex subcontracted with King Construction of Houston, LLC ("King Construction"), a Mississippi limited liability company, to provide some materials and labor for the construction.

In the case *sub judice*, Noatex alleged that APMM owed it money for goods and services that Noatex provided to APMM under the contract. Noatex questioned some of the invoices submitted to it by King Construction pertaining to the subcontract work. In response to this billing dispute between Noatex and King Construction, King Construction notified APMM on September 23, 2011, pursuant to Mississippi's "Stop Notice" Statute, Mississippi Code § 85-7-181, that Noatex owed King Construction $260,410.15 and that King Construction was filing a "Laborer's and Materialman's Lien and Stop Notice" in the Chancery Court of Lee County, Mississippi. The stop notice bound the disputed funds in APMM's hands to secure invoice claims that Noatex allegedly owed to King Construction. *See* MISS. CODE ANN. § 85-7-181 ("[T]he amount that may be due . . . shall be bound in the hands of such owner for the payment in full . . . ."). King Construction's filing of the stop notice in the *lis pendens* record of the chancery court had the effect of establishing King Construction's lien priority over the property that was the subject of the dispute. *See id.* § 85-7-197. APMM later deposited the $260,410.15 in the registry of the Chancery Court of Lee County.

The dispute resulted in three lawsuits, one of which was the case *sub judice*.[4]  APMM

---

[3] To a great extent, the genesis of this complex litigation arose from a fee dispute between the current Respondent and its original client, Noatex Corporation.

originally filed this action in the Chancery Court of Lee County to determine ownership of the disputed funds subject to King Construction's stop notice, naming both Noatex and King Construction as defendants. In December of 2011, Noatex removed this action to this Court. APMM deposited the money into the Court registry and filed an amended complaint in interpleader [135] naming Kohn Law Group as an additional defendant. APMM then filed a motion to discharge itself as a disinterested stakeholder in the action.

On March 3, 2014, this Court entered an Order [236] and memorandum opinion [237], finding that the action was a 28 U.S.C. § 1335 interpleader in which three parties claimed entitlement to the fund: King Construction on one side and Noatex and Kohn Law Group on the other side. The Court discharged APMM as a disinterested stakeholder in the interpleader action and ordered that King Construction, Noatex, and Kohn Law Group were "enjoined from filing any proceedings against APMM relating to the interpleader fund without an order of this Court allowing the same." *See* Ct.'s Order Granting APMM's Mot. Dismiss or Discharge Pl. [236] at 1.

While the interpleader action was pending, on September 18, 2012, Kohn Law Group commenced the California district court case on the basis of diversity jurisdiction, seeking

---

[4] The other two lawsuits were a declaratory judgment action and breach of contract action. Noatex filed the declaratory action (No. 3:11-cv-00137) against King Construction and its principal Carl King, challenging the facial constitutionality and constitutionality-as-applied of the Stop Notice statute. The State of Mississippi intervened to defend the constitutionality of its statute. United States Magistrate Judge S. Allan Alexander issued a declaratory judgment in favor of Noatex, concluding that Mississippi Code § 85-7-181 violated due process and that King Construction's stop notice thus had no effect on the funds APMM had deposited in the Court's registry. On appeal, *inter alia*, the Fifth Circuit Court of Appeals affirmed the Court's determination that Mississippi's Stop Notice statute was facially unconstitutional due to the lack of procedural safeguards that amounted to a facially unconstitutional deprivation of property without due process. *See Noatex Corp. v. King Constr. of Houston, L.L.C.,* 732 F.3d 479 (5th Cir. 2013). This ruling did not include a determination as to any of the rights of the parties to the money frozen by the stop notice.

In the other suit (No. 3:11-cv-00152), Noatex sued King Construction for breach of contract in this Court claiming damages in excess of $500,000, but that action was dismissed when this Court granted Noatex's motion to voluntarily dismiss its breach of contract action without prejudice.

recovery pursuant to Section 9607(a) and subdivision (3) of the California Commercial Code and characterizing Kohn Law Group as a creditor, Noatex as a debtor, and APMM as the account debtor that allegedly owed Noatex the amount at stake in the interpleader action. This Court notes that in the hearing on APMM's motion to enforce permanent injunction in the case *sub judice*, this Court took judicial notice of, *inter alia*, all filings in the California district court case.

The California district court stated in its Order dated December 11, 2012:

> Practically speaking, Kohn [Law Group]'s Complaint asks this Court to short-circuit the ongoing Mississippi interpleader action as to this $260,410.15 and award the funds to Kohn [Law Group]. APMM's Motion asks this Court to dismiss (or alternatively to stay) Kohn [Law Group]'s attempt to do so. The Court declines to dismiss the action but will enter a stay . . . until the Mississippi interpleader action is resolved.
>
> . . .
>
> To the extent Noatex is entitled to the $260,410.15, Kohn [Law Group] properly may litigate this lawsuit to collect that amount from APMM. However, given the ongoing Mississippi interpleader action, at this stage the Court will not interject itself to adjudicate the question at the heart of that action – i.e., whether Noatex is entitled to the $260,410.15. A stay of these proceedings in favor of the ongoing Mississippi interpleader action therefore is appropriate. Significantly, if Kohn [Law Group] is joined as a party, the Mississippi court may award Kohn [Law Group] the $260,410.15 as part of the interpleader action. Alternatively, if Kohn [Law Group] is correct, and APMM cannot maintain the interpleader action, then the stay soon may be lifted.

Ct.'s Order [23 in No. 2:12-cv-08063-MWF-MRW] at 3–4, 5. At that time, unquestionably, Kohn Law Group sought recovery related to the interpleader. However, at that time, this Court had not yet entered its permanent injunction.

This Court entered that permanent injunction on March 3, 2014 in its Order discharging APMM as a plaintiff in the interpleader. The Court specifically permanently enjoined "[King

4

Construction, Noatex, and Kohn Law Group] from filing any proceedings against APMM relating to the interpleader fund without an order of this Court allowing the same." *See* Ct.'s Order Granting APMM's Mot. Dismiss or Discharge Pl. [236] at 1. The validity of this Court's permanent injunction was upheld by the Fifth Circuit Court of Appeals in the published opinion *Auto Parts Manufacturing Mississippi, Inc. v. King Construction of Houston, L.L.C.*, 782 F.3d 186 (5th Cir.), *cert. denied sub nom. Noatex Corp. v. Auto Parts Manufacturing Mississippi Inc.*, 136 S. Ct. 330, 193 L. Ed. 2d 230 (2015).

In the case *sub judice*, Defendants Noatex and Kohn Law Group filed motions to dismiss Kohn Law Group, and this Court granted those motions insofar as the same requested the dismissal of Kohn Law Group as a claimant to the interpleader fund, finding that APMM failed to plead facts that would plausibly show an existing conflict between Kohn Law Group and any other claimant. The Court noted in its memorandum opinion [244] relative to the same that Kohn Law Group had already brought the action in the United States District Court for the Central District of California to enforce its asserted lien against Noatex in the event that this Court found that Noatex had rights in the interpleader fund. Subsequently, the parties entered into an agreement to settle the dispute. Under the terms of the settlement agreement, which is made part of the public record of the case *sub judice*, *see* Settlement Agreement & Mutual Release [263-1], the interpleader fund was disbursed as follows: not less than $109,750 to King Construction and not less than $150,660.15 to Noatex with any additional funds in the registry to be distributed equally between King Construction and Noatex. *See id.* at 6 ¶¶ 2–3.

Despite the fact that this Court entered its permanent injunction on March 3, 2014, Kohn Law Group continued to pursue the California district court case against APMM. On December 3, 2015—one year and nine months after the permanent injunction went into effect—Kohn Law

Group filed its first amended complaint in the California district court case. *See* No. 2:12-cv-08063-MWF-MRW Docket Sheet [328-1] at 3; Kohn Law Grp.'s First Am. Compl. [66 in No. 2:12-cv-08063-MWF-MRW]. After APMM filed a motion to dismiss the first amended complaint in that case, Kohn Law Group filed an opposition to the same. *See* No. 2:12-cv-08063-MWF-MRW Docket Sheet [328-1] at 4. Subsequently, the parties engaged in discovery. *See id.*

On April 14, 2016, in the case *sub judice*, APMM filed a motion to reopen this case and enforce this Court's permanent injunction [282].

In the California district court case, on April 26, 2016, Kohn Law Group filed an *ex parte* application for a temporary restraining order [93], requesting that the California district court enjoin APMM from filing "duplicative litigation" in Mississippi. The California district court subsequently entered an Order stating that the issue of whether Kohn Law Group's first amended complaint in the California district court case violated said permanent injunction was for this Court to decide, particularly because this Court can enforce its permanent injunction and prohibit Kohn Law Group from prosecuting this action. *See* Ct.'s Order Denying Kohn Law Group's *Ex Parte* Applic. TRO [96 in No. 2:12-cv-08063-MWF-MRW] at 3.

In the case *sub judice*, on June 23, 2016, the Court entered an Order [289] granting APMM's motion to reopen case and placing the case upon the Court's active trial docket to ascertain whether Kohn Law Group had violated the terms of this Court's permanent injunction.

In the California district court case, on July 11, 2016, Kohn Law Group filed a motion for summary judgment wherein Kohn Law Group requested summary judgment and the entry of judgment in its favor in the amount of the interpleader, $260,410.15. *See* No. 2:12-cv-08063-MWF-MRW Docket Sheet [328-1] at 7; Kohn Law Grp.'s Mot. Summ. J. [107 in No. 2:12-cv-

08063-MWF-MRW] at 2.[5]

In the case *sub judice*, the Court held an evidentiary hearing on APMM's motion to enforce permanent injunction on August 23, 2016, and allowed post-hearing briefing on the motion. On October 6, 2016, the Court entered an Order [320] and memorandum opinion [321] granting APMM's motion for enforcement of the permanent injunction [282], finding that Kohn Law Group had violated this Court's permanent injunction by continuing to pursue litigation against APMM in the United States District Court for the Central District of California in the case styled *Kohn Law Group Inc. v. Auto Parts Manufacturing Mississippi Inc., et al.*, No. 2:12-cv-08063-MWF-MRW (C.D. Calif. 2012). This Court held that Kohn Law Group was in civil contempt, but could purge itself of contempt by ceasing and desisting pursuit of the aforementioned case by filing a motion to dismiss with prejudice all claims in the California district court. The Court withheld the matter of imposition of sanctions for thirty days following the date of the Order and memorandum opinion. Subsequently, on December 12, 2016, APMM filed the present motion for the imposition of coercive and compensatory sanctions against Kohn Law Group [328], which, as mentioned above, the parties have fully briefed.

In the California district court case, on January 20, 2017, Kohn Law Group filed a 20-page opposition to APMM's motion to stay that case; in its opposition, Kohn Law Group requested that the California district court rule on Kohn Law Group's motion for summary judgment "without further delay." *See* Kohn Law Grp.'s Opp'n to APMM's *Ex Parte* App. Stay Case Pending Dismissal [131 in No. 2:12-cv-08063-MWF-MRW] at 8, 18. The California

---

[5] The allegations in Kohn Law Group's first amended complaint evidencing civil contempt through violation of this Court's permanent injunction and the arguments by Kohn Law Group in its motion for summary judgment that evidence civil contempt through violation of this Court's permanent injunction are set forth on pages 11–15 of this Court's memorandum opinion [321] granting APMM's motion for enforcement of permanent injunction. That analysis is incorporated by reference herein.

district court then entered an Order staying the action until this Court ruled on the issue of civil contempt sanctions. *See* Ct.'s Order Staying Action Pending Final Merits Decision in Miss. Action [133 in No. 2:12-cv-08063-MWF-MRW].

In the case *sub judice*, on February 3, 2017, Kohn Law Group filed a motion to stay pending appeal of any compulsory or coercive sanctions that may be ordered [346], which the parties have also fully briefed.

With the foregoing factual and procedural background in mind, the Court sets forth a background of the pertinent law.

## II.   *Background of the Pertinent Law*

As the Court has stated in prior opinions in the case *sub judice*, interpleader offers a procedural protection for the stakeholder willing to deposit the amount into the court registry from the expenses and risks of defending the action; the idea is that the stakeholder gives up the money and allows those among whom the dispute really exists to fight it out at their own expense, and in turn, the stakeholder is shielded from the liability of defending multiple possible lawsuits. *See Tittle v. Enron Corp.*, 463 F.3d 410, 423 (5th Cir. 2006) ("The legislative purpose of an interpleader action is to remedy the problems posed by multiple claimants to a single fund, and to protect a stakeholder from the possibility of multiple claims on a single fund."); *Wausau Ins. Cos. v. Gifford*, 954 F.2d 1098, 1100 (5th Cir. 1992); *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364 (5th Cir. 1983).

The Court "has broad powers in an interpleader action." *See Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1714 (3d ed. 2001). Title 28 U.S.C. § 2361 "expressly authorizes a district court to enter an order restraining claimants 'from instituting or prosecuting

8

any proceeding in any State or United States court affecting the property . . . involved in the interpleader action until further order of the court.' " *Auto Parts Mfg. Miss., Inc.*, 782 F.3d at 195 (quoting 28 U.S.C. § 2361). "Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361. Although Rule 65 of the Federal Rules of Civil Procedure generally governs the issuance of injunctions and restraining orders, Rule 65 "do[es] not modify . . . 28 U.S.C. § 2361, which relates to . . . injunctions in actions of interpleader or in the nature of interpleader[.]" FED. R. CIV. P. 65(e)(2).[6]

In the case *sub judice*, this Court "enjoined [King Construction, Noatex, and Kohn Law Group] from filing any proceedings against APMM relating to the interpleader fund without an order of this Court allowing the same." *See* Ct.'s Order Granting APMM's Mot. Dismiss or Discharge Pl. [236] at 1. As stated above, the Fifth Circuit Court of Appeals upheld the validity of the permanent injunction in the published opinion *Auto Parts Manufacturing Mississippi, Inc. v. King Construction of Houston, L.L.C.*, 782 F.3d 186, 192 (5th Cir.), *cert. denied sub nom. Noatex Corp. v. Auto Parts Manufacturing Mississippi Inc.*, 136 S. Ct. 330, 193 L. Ed. 2d 230 (2015).

In accordance with the interpleader statute and the issuance of a permanent injunction, this Court may "make all appropriate orders to enforce its judgment." *See* 28 U.S.C. § 2361; *Rhoades*, 196 F.3d at 600–01. *See also Peacock v. Thomas*, 516 U.S. 349, 356–57, 116 S. Ct. 862, 133 L. Ed. 2d 817 (1996) (federal court has "inherent power to enforce its judgments");

---

[6] Rule 65(e)(2) does not apply to Rule 22 interpleader actions. *See* 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2958 (3d ed. 2001). However, this interpleader action was a 28 U.S.C. § 1335 statutory interpleader, not a Rule 22 interpleader. *See* Ct.'s Mem. Op. [237] Granting APMM's Mot. Discharge or Discharge Pl. [175] at 4–6. Therefore, this distinction is immaterial.

*Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993) ("When a court issues an injunction, it automatically retains jurisdiction to enforce it.").

As explained in this Court's memorandum opinion [321] granting APMM's motion for enforcement of the permanent injunction [282], Kohn Law Group has violated this Court's permanent injunction by pursuing litigation against APMM in the California district court case. Thus, as demonstrated in the Court's memorandum opinion [321] granting APMM's motion for enforcement of the permanent injunction [282], Kohn Law Group is in civil contempt of the Court's permanent injunction.

"A court's ability to punish contempt is thought to be an inherent and integral element of its power and has deep historical roots." WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2960. Contempt authority is a power "necessary to the exercise of all others." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994) ("Courts independently must be vested with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and to preserve themselves and their officers from the approach and insults of pollution."); *see Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980) (contempt powers are "the most prominent" of court's inherent powers "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court"). "Upon a finding of contempt, [as in the case *sub judice*,] the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *See DeStephano v. Broadwing Commc'ns, Inc.*, 48 F. App'x 103, 2002 WL 31016599, at *2 (5th Cir. 2002) (per curiam) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000)).

### III.    Parties' Arguments

APMM argues in its motion for sanctions that the Court should impose both coercive and compensatory sanctions against Kohn Law Group for contempt. Specifically, APMM requests that the Court impose coercive sanctions in the form of a daily assessment from and after November 8, 2016 in an amount to be set by this Court and to be paid by Kohn Law Group into this Court's registry until litigation in the California district court case is finally concluded, either through Kohn Law Group's dismissal with prejudice or exhaustion of any appeals filed by Kohn Law Group. APMM further requests that the Court impose compensatory sanctions payable to APMM by a date set by the Court for attorneys' fees and expenses incurred by APMM. APMM argues in its motion that any good faith on Kohn Law Group's part in filing the first amended complaint or the motion to reverse and revise in the California district court case is irrelevant and does not protect against compensatory sanctions in the form of attorneys' fees. APMM also argues that Kohn Law Group should be required to post a bond in the amount of at least $300,000 (or any amount approved by the Court) as security for payment of sanctions and that if Kohn Law Group is required to post such bond APMM does not oppose a stay of the imposition of sanctions pending appeal. Finally, APMM requests that this Court prohibit Kohn Law Group from filing any notice of appeal or other pleading in either the case *sub judice* or the California district court case until such time as a bond has been posted.

Kohn Law Group argues in response that the Court should not award attorneys' fees to APMM, because "there is no contempt by Kohn Law [Group]" and "because the request for attorney[s'] fees (itself) demonstrates the absence of any contempt by Kohn Law [Group]" in that "no more than a single motion by APMM would have been needed if indeed the debts sought by Kohn Law [Group] were the same as the interpleader fund." Kohn Law Grp.'s Mem.

11

Br. Supp. Resp. Opp'n to APMM's Mot. Sanctions [335] at 4, 5. Kohn Law Group further argues that APMM offers no testimony to provide a basis for concluding that the rates were in line with the market for the services provided. Kohn Law Group maintains that APMM fails to demonstrate the lodestar amount and further that "no reasonable client would pay Baker and Hostetler's rates for such a small matter in Los Angeles (or Mitchell, McNutt & Sam's rates in Tupelo, either)"; Kohn Law Group maintains that "[APMM's] claimed fees of $208,697.71, without even going to trial, in a case worth no more than $260,410.15 (plus interest), prove that to be true." *Id.* at 7–8.[7] Kohn Law Group further argues that "all of the hours that may have been devoted to enforcing the injunction here in Mississippi were also duplicative of some of the work done by APMM's lawyers in the California action" on the issue of whether Kohn Law Group's California district court case sought to recover the interpleader fund; thus, Kohn Law Group maintains that none of the Mississippi legal fees are compensable. *Id.* at 8. Kohn Law Group argues that "[m]uch [of] the other California work of APMM's counsel there was also unnecessary," including pursuing certain defenses and discovery and filing a motion to dismiss. *Id.* at 9–10. Next, Kohn Law Group provides lengthy arguments against the propriety of coercive sanctions. *See id.* at 15–19. Finally, Kohn Law Group argues that any sanctions should be stayed pending appeal, because Kohn Law Group contends it has "a strong likelihood of success on appeal." *Id.* at 22.

In its motion for a stay pending appeal of any compulsory or coercive sanctions that may be ordered [346], Kohn Law Group requests that the Court stay any order that would compel or coerce the dismissal of the California district court case against APMM pending appeal to review that order and further stay any potential fines from accruing to coerce a dismissal until

---

[7] The amount Kohn Law Group references here as the maximum amount at stake in the California district court case, "$260,410.15 (plus interest)," was the exact amount of the interpleader in the case *sub judice.*

disposition of the anticipated appeal. Kohn Law Group presents several arguments in support of its position. APMM objects to the motion as premature, but states that it does not oppose a stay solely as to an order directing Kohn Law Group to dismiss the California district court case. Upon due consideration of all of the foregoing, the Court finds as follows.

### IV.    Analysis and Discussion

"Federal courts possess certain 'inherent powers . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Goodyear Tire & Rubber Co. v. Haeger*, — U.S. —, —, 137 S. Ct. 1178, 1186, — L. Ed. — (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.' " *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). Such sanctions may be imposed even after an action is no longer pending. *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 637–38 (5th Cir. 2008) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 139, 112 S. Ct. 1076, 117 L. Ed. 2d 280 (1992).

"The district court has broad discretion in the assessment of damages in a civil contempt proceeding." *Am. Airlines, Inc*, 228 F.3d at 585 (internal quotation marks and citations omitted). " 'Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.' " *Id.* (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04, 67 S. Ct. 677, 91 L. Ed. 884 (1947)). *See also Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976) ("Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's

noncompliance."); *Lance v. Plummer*, 353 F.2d 585, 592 (5th Cir. 1965) ("[R]emedial or coercive sanctions may be imposed . . . , such as are designed to compensate the complainant for losses sustained and coerce obedience for the benefit of the complainant.").

"Courts for centuries have possessed the inherent power to enforce their lawful decrees through the use of coercive sanctions in civil contempt proceedings." *Scott v. Hunt Oil Co.*, 398 F.2d 810, 811 (5th Cir. 1968). " '[C]oercive' sanctions [are] designed to make a party comply with a court order." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186 n.4. When shaping coercive sanctions, the Court takes into account "the character and magnitude of the harm threatened by the continued contumacy," "the probable effectiveness of [the] suggested sanction in bringing about the result desired," and "the amount of [the party in contempt's] financial resources and the consequent seriousness of the burden to that particular defendant." *See United Mine Workers of Am.*, 330 U.S. at 303–04, 67 S. Ct. 677. Coercive sanctions are "avoidable through obedience." *Bagwell*, 512 U.S. at 827, 114 S. Ct. 2552.

Furthermore, the Court may " 'order[ ] the award of attorneys' fees for compensatory purposes' where a party 'necessarily expended [fees] in bringing an action to enforce' the injunction." *See Matter of Skyport Glob. Commc'ns, Inc.*, 661 F. App'x 835, 841 (5th Cir. 2016) (per curiam) (quoting *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977)); *see also* A.S. KLEIN, ANNOTATION, ALLOWANCE OF ATTORNEYS' FEES IN CIVIL CONTEMPT PROCEEDINGS, 43 A.L.R.3d 793, § 2 (1972) ("Almost without exception it is within the discretion of the trial court to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys' fees incurred in the investigation and prosecution of the contempt proceedings."). In order to impose compensatory sanctions in the form of

attorneys' fees, the Court must specifically find that the party "acted in bad faith." *See Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186 (citing *Chambers*, 501 U.S. at 45, 111 S. Ct. 2123); *In re Hermesmeyer*, No. 16-11189, --- F. App'x ---, 2017 WL 1683073, at \*3 (5th Cir. May 2, 2017) (per curiam) (citing *In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016)). "Bad faith may be found in actions that led to the litigation as well as in the conduct of the litigation, including the failure to comply with court orders." *In re Mot. Sanctions Against Meyers*, No. 4:12-MC-015-A, 2014 WL 1910621, at \*16 (N.D. Tex. May 9, 2014); *see In Re W. Fid. Mktg., Inc.*, No. 4:01–MC–0020–A, 2001 WL 34664165, at \*19 (N.D. Tex. June 26, 2001). Such a sanction imposed in a civil contempt proceeding "must be compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186. The United States Supreme Court has instructed:

> [T]he court can shift only those attorney's fees incurred because of the misconduct at issue. Compensation for a wrong, after all, tracks the loss resulting from that wrong. So as we have previously noted, a sanction counts as compensatory only if it is "calibrate[d] to [the] damages caused by" the bad-faith acts on which it is based. [*Bagwell*, 512 U.S. at 834, 114 S. Ct. 2552]. A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment. Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party.
>
> That kind of causal connection . . . is appropriately framed as a but-for test: The complaining party . . . may recover "only the portion of his fees that he would not have paid but for" the misconduct. *Fox v. Vice*, 563 U.S. 826, 836, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011); *see Paroline v. United States*, 572 U.S. ——, ——, 134 S. Ct. 1710, 1722, 188 L. Ed. 2d 714 (2014). . . .
>
> This but-for causation standard generally demands that a district court assess and allocate specific litigation expenses—yet still allows it to exercise discretion and judgment. The court's

fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have accrued.

*Id.* at 1186–1187 (footnote omitted). The Supreme Court has indicated that "[i]n exceptional cases," a trial court may shift all of the party's fees in a suit "in one fell swoop" when "literally everything the [party in contempt] did—'his entire course of conduct' throughout, and indeed preceding, the litigation—was 'part of a sordid scheme' to defeat a valid claim"; in such a case, the district court can reasonably conclude that all legal expenses in the lawsuit " 'were caused . . . solely by [his] fraudulent and brazenly unethical efforts.' " *Id.* at 1187–1188 (quoting *Chambers*, 501 U.S. at 51, 57, 58, 111 S. Ct. 2123). In *Lubrizol Corp. v. Exxon Corp.*, 957 F.2d 1302 (5th Cir. 1992), the Fifth Circuit affirmed a sanction of $2,424,462.04 in attorneys' fees and expenses for an entire course of litigation for the plaintiff's failure to comply with an order directing it to submit specific information to the court. *Id.* at 1304.

Regardless of whether a court imposes coercive sanctions or compensatory sanctions or both, "[a]s a general rule, a court imposing sanctions 'must use the least restrictive sanction necessary to deter the inappropriate behavior.' " *In re Hermesmeyer*, 2017 WL 1683073, at \*4 (quoting *In re First City Bancorporation of Tex. Inc.*, 282 F.3d 864, 867 (5th Cir. 2002)).

In the case *sub judice*, Kohn Law Group has demonstrated a clear and egregious disregard of the Court's permanent injunction and subsequent finding of violation and contempt by continuing to pursue the litigation against APMM in the United States District Court for the Central District of California. APMM detailed Kohn Law Group's bad-faith conduct to the Court in the evidentiary hearing on the motion to enforce the permanent injunction, as well as in its briefing in support of civil contempt and sanctions. APMM supported its arguments with

16

clear and convincing evidence, including the docket sheet and various filings in the California district court case. Per the parties' request at the hearing, this Court took judicial notice of all the filings in the California district court case. As explained in detail in the Court's memorandum opinion [321] granting APMM's motion to enforce the permanent injunction, Kohn Law Group violated the Court's permanent injunction by pursuing the California district court case against APMM, including filing a first amended complaint, engaging in discovery, and filing a motion for summary judgment. That bad-faith conduct has continued to the present day. As set forth in detail in the factual and procedural background above, even after this Court entered its Order and memorandum opinion finding Kohn Law Group in civil contempt in the case *sub judice*, Kohn Law Group filed a 20-page document in the United States District Court for the Central District of California, requesting that the California district court rule on Kohn Law Group's motion for summary judgment "without further delay." *See* Kohn Law Grp.'s Opp'n to APMM's *Ex Parte* App. Stay Case Pending Dismissal [131 in No. 2:12-cv-08063-MWF-MRW] at 8, 18.

Kohn Law Group had only to obey the injunction and the Court's order to cease and desist pursuit of the California district court litigation to purge itself of contempt. Furthermore, but for Kohn Law Group's conduct, APMM's attorneys' fees would not have been incurred. The Court therefore makes the specific finding that Kohn Law Group acted in bad faith.

In this Court's October 6, 2016 Order [320] granting APMM's motion for enforcement of permanent injunction, the Court ordered that Kohn Law Group was in civil contempt and could purge itself of contempt by ceasing and desisting pursuit of the California district court case against APMM. The Court directed Kohn Law Group that it could purge itself of contempt "by filing a motion to dismiss with prejudice all claims in the California district court case." Ct.'s Order [320] at 1. Kohn Law Group's continued pursuit of that litigation was and is in flagrant

violation of this Court's permanent injunction and constitutes contempt warranting sanctions.

The Court is troubled by Kohn Law Group's utter disregard for the Court's permanent injunction and subsequent Orders. As the Court stated in an earlier memorandum opinion, the Court's Orders are not a mere filament. "[A] district court may use its inherent power to sanction conduct that is in direct defiance of the sanctioning court or constitutes disobedience to the orders of the judiciary." *In re Mot. Sanctions Against Meyers*, 2014 WL 1910621, at *16 (citing *Positive Software Sols., Inc. v. New Century Mortg., Corp.*, 619 F.3d 458–60 (5th Cir. 2010)).

In light of Kohn Law Group's flagrant disobedience of the Court's permanent injunction and Order finding Kohn Law Group to be in civil contempt, the Court finds that coercive sanctions should be imposed. The Court therefore assesses coercive sanctions of $100 per day to be paid from the date of this memorandum opinion and corresponding Order and Judgment until such date as this Court enters an Order that Kohn Law Group has purged itself of civil contempt. The Court's *de minimis* award of coercive sanctions takes into account the award of compensatory damages that shall also be imposed in this memorandum opinion and corresponding Order and Judgment. The Court will only enter an Order finding that Kohn Law Group has purged itself of civil contempt if the following two conditions are met: (1) Kohn Law Group files a motion to dismiss with prejudice all claims in the case styled *Kohn Law Group Inc. v. Auto Parts Manufacturing Mississippi Inc., et al.*, No. 2:12-cv-08063-MWF-MRW (C.D. Calif. 2012); and (2) Kohn Law Group files a notice in the case *sub judice* attaching an order of dismissal with prejudice signed and entered by the United States District Court for the Central District of California in the case styled *Kohn Law Group Inc. v. Auto Parts Manufacturing Mississippi Inc., et al.*, No. 2:12-cv-08063-MWF-MRW (C.D. Calif. 2012).

In addition, the Court hereby uses its inherent power to impose compensatory sanctions against Kohn Law Group in the form of attorneys' fees and costs to be paid to APMM. Although Kohn Law Group argues that APMM's defense in the California district court case was duplicative of its pursuit of contempt and sanctions in this Court, this argument is without merit. APMM's pursuit of a finding of contempt and sanctions in this Court was justified, given Kohn Law Group's continuing violation of this Court's permanent injunction in pursuing litigation against APMM in the California district court case. The legal representation of APMM in the California district court case was also necessary, given Kohn Law Group's continued pursuit of that litigation against APMM. Kohn Law Group argues in its brief that the proceeding in California is a "small matter" and challenges the amount of attorneys' fees requested by APMM on this basis. Kohn Law Group has never treated either the interpleader or the California district court case against APMM concerning the interpleader as "small matters," but has instead proceeded as if millions of dollars were at stake. As a result, the actions have been multiplied and amplified primarily by the continued pursuit of litigation against APMM by Kohn Law Group. This pursuit was taken with much vigor, and thus, it is both understandable and reasonable that APMM would defend itself with equal vigor. Therefore, Kohn Law Group's arguments fail to persuade this Court that APMM's legal representation was duplicative or superfluous.

The Fifth Circuit uses the "lodestar" method to calculate reasonable attorneys' fees, multiplying the number of hours spent on the matter by a reasonable hourly rate for such work in the community. *Cantu Servs., Inc. v. Frazier*, No. 16-31035, 2017 WL 1089508, at *3 (5th Cir. Mar. 22, 2017) (citing *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 392 (5th Cir. 2016)). Reasonable hourly rates are typically calculated through affidavits by attorneys practicing in the

community in which the district court is located. *Tollett v. City of Kemah, Tex.*, 285 F.3d 357, 368 (5th Cir. 2002). "In calculating the lodestar, '[t]he court should exclude all time that is excessive, duplicative, or inadequately documented.' " *Combs*, 829 F.3d at 392. "[T]here is a 'strong presumption' that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S. Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010).

After calculating the lodestar figure, the Court must consider the twelve *Johnson* factors, which are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Cobb v. Miller*, 818 F.2d 1227, 1231 n.5 (5th Cir. 1987) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

In the case *sub judice*, APMM attaches the following supporting documentation to its motion: **(1)** the docket sheet of the California district court case from and after September 17, 2015; **(2)** the declaration of Martha Stegall, Mississippi counsel for APMM in the case *sub judice*, with attached invoice summaries detailing legal services by Ms. Stegall and Otis R. Tims of Mitchell, McNutt & Sams, P.A. from and after October 1, 2015—the month after the stay was lifted in the California district court case—in the amount of $164,994.79; and **(3)** the declaration of Michael Matthias, counsel for APMM in the California district court case, with attached invoice summaries purportedly detailing legal services by Mr. Matthias and Blythe Gollay of

Baker & Hostetler LLP from September of 2015 through October 31, 2016 in the amount of $208,697.71. In addition, APMM has filed 163 pages of invoices detailing the charges included in the earlier filed invoice summaries. Upon thorough review of these entries, the Court finds that the documentation supports the reasonableness of APMM's attorneys' fees and hourly billing rates for the legal representation and also supports the *Johnson* factors.

According to Ms. Stegall's declaration, she is a partner in the law firm of Mitchell, McNutt & Sams, P.A. and has practiced in the State of Mississippi since 1989 in all state and federal courts, including the United States Supreme Court. Ms. Stegall declares that Mr. Tims is a partner in the law firm of Mitchell, McNutt & Sams, P.A., and that Mr. Tims has practiced law in the State of Mississippi since 1985 in all state and federal courts, including the United States Supreme Court. Ms. Stegall declares that she has been involved in and tried numerous civil litigation cases, is familiar with the usual and customary rates charged by attorneys practicing law in federal courts for the Northern District of Mississippi, and that these usual and customary rates are $250 to $300 per hour.

To further support that the fees requested in the case *sub judice* are customary hourly billing rates, APMM has also submitted to the Court the declaration of Thomas A. Wicker, who declares he is a Mississippi attorney who has practiced law since January 3, 1980, and is admitted to practice in all state courts and many federal courts, including the United States District Courts for the Northern and Southern Districts of Mississippi, the Fifth Circuit Court of Appeals, the Eleventh Circuit Court of Appeals, and the United States Supreme Court. Wicker's Decl. [339-1] ¶¶ 1–2. Mr. Wicker further declares that he is familiar with hourly billing rates of attorneys practicing in the United States District Court for the Northern District of Mississippi, has "been involved in cases in which attorneys' fees have been applied for an award[, ] and

21

ha[s] provided affidavits and/or declarations in support of awards of attorneys' fees in other cases." *Id.* ¶ 4. Mr. Wicker declares that $250 is a "reasonable and customary" hourly billing rate "in a standard civil case in north Mississippi" and that "[h]igher rates have been allowed in similar litigation in the United States District Courts for the Northern and Southern Districts of Mississippi." *Id.* ¶ 5.

In addition to the declarations of Ms. Stegall and Mr. Wicker, the undersigned has considered his own knowledge of customary hourly billing rates for attorneys in the State of Mississippi. Over the Court's lengthy career, the Court has addressed the matter of attorneys' fees in dozens of cases in the State of Mississippi. Ms. Stegall accurately states the customary hourly billing rates of attorneys in the community as between $250 and $300, particularly given the legal experience of Ms. Stegall and Mr. Tims. Thus, the fees requested by APMM for Mississippi counsel's legal representation are based on customary hourly billing rates in the community.

Not only are the hourly billing rates commensurate for local attorneys with similar experience, however, the time spent on these matters was necessary, given the nature of the cases. In Ms. Stegall's declaration and arguments in the briefs supporting the request for attorneys' fees, she states that Kohn Law Group's continuous pursuit of litigation against APMM necessitated APMM's pursuit of the contempt proceeding against Kohn Law Group, including preparing and filing motions and supporting briefs; taking depositions in California of Robert E. Kohn, principal of Kohn Law Group, and of Osamu Nishiyama, President of Noatex Corporation; and preparing for and participating in the hearing on the motion for contempt. In addition, Ms. Stegall declares that she and Mr. Tims provided assistance to APMM's counsel in APMM's defense in the California district court case, including providing information

concerning details of the interpleader lawsuit, as well as relevant documentation; reviewing pleadings and discovery filed in the California district court case; and counseling APMM representatives concerning the status of the California district court case. The motion, briefing, declaration of Ms. Stegall, attached invoice summaries, and invoices detail legal services provided by Ms. Stegall and Mr. Tims from October 1, 2015 through November 30, 2015 in the amount of $164,994.79.

The lodestar calculation for Ms. Stegall is her $225 hourly billing rate multiplied by the total number of hours expended. Although Ms. Stegall does not specify in her declaration the total number of hours she expended, each detailed invoice indicates the particular number of hours Ms. Stegall expended for that particular period of time. In adding the total number of hours expended on each invoice, Ms. Stegall expended a total of 324.8 hours. Invoices [353] at 1–66. Therefore, Ms. Stegall's lodestar is $225 multiplied by 324.8 total hours, which is $73,080.

The lodestar calculation for Mr. Tims is his $225 hourly billing rate multiplied by the total number of hours expended. Although Ms. Stegall similarly does not specify in her declaration the total number of hours expended by Mr. Tims, each detailed invoice indicates the particular number of hours Mr. Tims expended for that particular time period. In adding the total number of hours expended on each invoice, Mr. Tims expended a total of 385.2 hours. *Id.* at 1–66. Therefore, Mr. Tims' lodestar is $225 multiplied by 385.2 hours, which is $86,670.

Therefore, the total lodestar for the Mitchell, McNutt & Sams, P.A. attorneys is $159,750.

The costs requested by Mitchell, McNutt & Sams, P.A. include the following: **(1)** payments to the PACER Service Center for court records, *id.* at 7, 16, 20, 27, 33, 38, 43, 49, 57,

23

60, 66; **(2)** copies, *id.* at 7, 12, 16, 20, 27, 33, 39, 43, 49, 57, 60; **(3)** long-distance telephone calls, *id.* at 7, 12, 27, 33, 38, 43, 49 56–57, 60, 66; **(4)** Lexis and other online computer research, *id.* at 12, 16, 27, 56–57; **(5)** travel costs, including mileage, airfare, lodging, meals, parking, *id.* at 56–57; **(6)** deposition transcript and videography, *id.* at 57, 60; and **(7)** postage, *id.* at 57, 60.

APMM further requests that the Court impose compensatory sanctions payable to APMM by a date set by this Court for attorneys' fees and expenses incurred by APMM after the stay was lifted in the California district court case from September 17, 2015 through October 31, 2015 in the amount of $208,697.71. In support of this request, Michael Matthias, counsel for APMM in the California district court case, submits his declaration with attached invoice summaries detailing legal services by Mr. Matthias and Blythe Gollay of Baker & Hostetler LLP in the amount of $208,697.71. Mr. Matthias declares that he is the supervising attorney handling the California district court case, that he has represented APMM since the commencement of that action, and that he is familiar with the time and other records maintained by Baker & Hostetler LLP in the matter and can attest to their authenticity and accuracy. Mr. Matthias further declares that he has practiced civil litigation primarily in the business and commercial area. Mr. Matthias declares that in 2015 his hourly billing rate for this matter was $690 and that in 2016 his hourly billing rate was $720. Mr. Matthias declares that APMM is also represented by Ms. Golay, an associate at Baker & Hostetler LLP whose 2015 hourly billing rate was $330 and 2016 hourly billing rate was $350. Mr. Matthias states that in his lengthy experience in the practice of law in the State of California, and particularly in Los Angeles, he has become familiar with the billing rates of attorneys at numerous law firms. Mr. Matthias declares that based upon this knowledge the respective billing rates of himself and Ms. Golay are commensurate with Los Angeles' firms' rates for attorneys with similar experience.

In addition to Mr. Matthias' declaration, APMM has also submitted to the Court the declaration of Kim Karelis, whom APMM has retained to provide an expert opinion concerning the customary hourly billing rates of California attorneys. *See* Karelis's Decl. [339-2] ¶ 1. Ms. Karelis declares that she is a partner of the law firm Ropers, Majeski, Kohn & Bentley, which has offices in Los Angeles (where she is based), San Francisco, Redwood City, San Jose, New York City, and Boston. *Id.* ¶ 2. Ms. Karelis further declares that she is an attorney licensed to practice before all courts of the State of California, the United States District Court for the Central District of California, and the Ninth Circuit Court of Appeals. *Id.* Ms. Karelis declares that she has "broad experience regarding legal fee disputes involving complex commercial matters that include disputed hourly rates" and has also "during the past 25 years . . . reviewed hundreds of attorney invoices in [her] capacity of coverage counsel for numerous insurance companies . . . ." *Id.* ¶¶ 3, 4. Ms. Karelis provides a detailed explanation of customary hourly billing rates, *see id.* ¶¶ 8–23, and declares that Mr. Matthias's hourly billing rates in 2015 and 2016 accurately reflect his 31+ years of experience in the State Bar of California, and that Ms. Golay's hourly billing rates in 2015 and 2016 accurately reflect her four-to-five years of experience in the State Bar of California. *Id.* ¶¶ 18–19, 23. The Court finds that based on all of the forgoing APMM has demonstrated that the hourly billing rates of Mr. Matthias and Ms. Golay are customary for that community.

Furthermore, APMM has demonstrated the necessity of legal representation in these matters. In Mr. Matthias's declaration, he states that Kohn Law Group's continuous pursuit of litigation against APMM in California has necessitated the filing of several motions, including motions to dismiss, a motion for protective order, and a motion to compel Kohn Law Group to respond to discovery requests. Mr. Matthias also declares that the California litigation has

necessitated responses to Kohn Law Group's supplemental requests pertaining to these motions, as well as responses to Kohn Law Group's motions against APMM. Finally, in this respect, Mr. Matthias declares that the California litigation has entailed numerous in-person meetings, conferences, hearings, and extensive discovery production, as well as assistance to APMM's Mississippi attorneys in the case *sub judice*. The attached invoice summaries and separately filed detailed invoices support that the total amount of legal fees and expenses incurred by APMM for Mr. Matthias's and Ms. Golay's legal representation totals $208,697.71 for 502.7 hours of service at their respective hourly billing rates. Mr. Matthias states that he believes these fees are reasonable given the extensive motion practice of the California district court case and the case *sub judice*.

The lodestar calculation for Mr. Matthias is as follows. Although Mr. Matthias does not specify in his declaration the total number of hours he expended by year, each detailed invoice indicates the particular number of hours Mr. Matthias expended for that particular time period. In adding the total number of hours expended on each invoice in 2015, the lodestar calculation for Mr. Matthias is his $690 hourly billing rate multiplied by the total number of hours expended in 2015, 24.3 hours. Invoices [353-1] at 1–20. Therefore, Mr. Matthias's lodestar for 2015 is $16,767. In adding the total number of hours expended on each invoice in 2016, the lodestar calculation for Mr. Matthias is his $720 hourly billing rate multiplied by the total number of hours expended that year, 50.9 hours. *Id.* at 21–97. Therefore, Mr. Matthias's lodestar for 2016 is $36,648.

The lodestar calculation for Ms. Golay is as follows. Although Mr. Matthias does not specify in his declaration the total number of hours Ms. Golay expended by year, each detailed invoice indicates the particular number of hours Ms. Golay expended for that particular time

period. In adding the total number of hours expended on each invoice in 2015, the lodestar calculation for Ms. Golay is her $330 hourly billing rate multiplied by the total number of hours expended in 2016, 71 hours. *Id.* at 1–20. Therefore, Ms. Golay's lodestar for 2015 is $23,430. In adding the total number of hours expended on each invoice in 2016, the lodestar calculation for Ms. Golay (referred to in certain invoices as Blythe Kochsiek, likely following a marriage) is $350 hourly billing rate multiplied by the total number of hours expended that year, 332.9 hours. *Id.* at 21–97. Therefore, Ms. Golay's lodestar for 2016 is $116,515.

In addition, in finding and adding together all pertinent entries, the Court has found that Baker & Hostetler LLP staff also billed a total of $5,705 in 2016 for 23.6 hours pertaining to billing, discovery, and pleadings in the California district court case. *Id.* at 45, 56, 60, 61, 64, 65, 69, 71, 81, 82, 83, 87, 89, 93, 94.

Therefore, the total lodestar for Baker & Hostetler LLP for 2015 is $40,197, and the total lodestar for Baker & Hostetler LLP for 2016 is $158,868. The total lodestar for Baker & Hostetler LLP for 2015 and 2016 is $199,065.

The costs requested by Baker & Hostetler LLP include the following: **(1)** postage, *id.* at 3, 8, 41–42; **(2)** online legal research, *id.* at 8, 14, 19–20, 25, 32, 52, 61, 74, 75, 83–84, 90; **(3)** ground transportation to attend hearings and status conferences, *id.* at 8, 32, 41–42, 83–84; **(4)** copies, *id.* at 14, 25, 32, 83, 84; **(5)** utilization of messenger service to deliver documentation to United States District Court for the Central District of California, *id.* at 19–20, 25, 32, 41–42, 61, 83, 84, 90; **(6)** electronic court fees, *id.* at 25, 52, 83, 84, 97; **(7)** court reporter fees for deposition transcript and videography of Robert Kohn, *id.* at 90; and **(8)** business meals during the deposition of Nishiyama, *id.* at 90.

In carefully examining the line items of the detailed invoices in light of the *Johnson* factors, the Court finds that APMM's legal counsel expended reasonable time on these tasks, which were necessary to the proceedings. Based on all of the foregoing, the Court finds that the lodestar figure is reasonable and that APMM's counsel's billing documentation reflects reasonable time—not excessive, duplicative, or inadequately documented time.

The Court also finds that the costs enumerated in these detailed invoices should be awarded. *See N.L.R.B. v. Concordia Elec. Co-Op, Inc.*, No. 95-60404, 1999 WL 1411474, at *9 (5th Cir. Nov. 9, 1999) (footnote omitted) ("A court may award costs and attorney's fees in a civil contempt case."); *Dow Chem. Co. v. Chem. Cleaning, Inc.*, 434 F.2d 1212, 1215 (5th Cir. 1970), *cert. denied, Chem. Cleaning Inc. v. Dow Chem. Co.*, 402 U.S. 945, 91 S. Ct. 1621, 29 L. Ed. 2d 113 (1971) ("[t]here are contempt cases in abundant number holding that a court has discretion to award reasonable attorney's fees and other expenses necessary to make an innocent party whole"). The Court is satisfied by the details of the services provided in the invoices that these fees were necessary and proper given the conduct of Kohn Law Group in pursuing litigation against APMM.

In the case *sub judice*, "the sanction issued . . . [seeks] to protect the sanctity of judicial decrees and the legal process." *See Am. Airlines, Inc.*, 228 F.3d at 585. "If recalcitrant litigants may subject their opponents to increased costs and delays with impunity, public confidence in the courts will be eroded. The public expects that litigants who willfully disregard court orders will not benefit from doing so." *Faulkner v. Kornman*, No. MISC. 10-301, 2012 WL 864574, at *3 (Bankr. S.D. Tex. Mar. 13, 2012). "Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender." *Waffenschmidt v. Mackay*,

763 F.2d 711 (5th Cir. 1985) (citing *Berry v. Midtown Serv. Corp.*, 104 F.2d 107, 110 (2d Cir. 1939)). "In our complex society, there is a great variety of limited loyalties, but the overriding loyalty of all is to our country and to the institutions under which a particular interest may be pursued." *United Mine Workers*, 330 U.S. at 306, 67 S. Ct. 677. "Essentially, the sanction restores [APMM] to where they were before they incurred attorneys' fees in an attempt to ensure compliance with the injunction." *See Matter of Skyport Glob. Commc'ns, Inc.*, 661 F. App'x at 841; *see also Cook*, 559 F.2d at 272. To this end, the Court imposes compensatory sanctions in the form of attorneys' fees and costs against Kohn Law Group to be paid to APMM in the total amount of $373,692.50 by July 15, 2017.

Finally, the Court examines Kohn Law Group's motion for a stay pending appeal of any sanctions that may be ordered [346]. Kohn Law Group requests that the Court stay any directive to dismiss the California action immediately pending an appeal of the Court's imposition of civil contempt sanctions. Kohn Law Group argues that no bond is necessary to protect APMM during the pendency of any such appeal. APMM has stated that any appeal should be accompanied by a good and sufficient supersedeas bond or security. In examining the factors established by case law, as well as the parties' arguments, the Court finds as follows.

The Court retains power to enforce its civil contempt orders and judgments unless the Court issues a stay by supersedeas bond to be given upon or after filing the notice of appeal. *See* FED. R. CIV. P. 62(d); *United States v. Revie*, 834 F.2d 1198, 1205 (5th Cir. 1987); *Brown v. Braddick*, 595 F.2d 961, 965 (5th Cir. 1979). "The taking of an appeal does not by itself suspend the operation or execution of a district-court judgment or order during the pendency of the appeal. Thus, the appellant who desires a stay of the lower federal court's action while the appeal is pending must seek an independent stay or injunctive order." 16A CHARLES ALAN

WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3954 (4th ed. 2017). "Rule 8(a) [of the Federal Rules of Appellate Procedure] governs the procedure for seeking a stay . . . from the court of appeals in a civil case." *Id.* Rule 8(a) provides in pertinent part that "[a] party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal . . . ." FED. R. APP. P. 8(a)(1)(A).

"A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) (internal quotation marks and citations omitted). "A stay is an 'intrusion into the ordinary processes of administration and judicial review . . . . The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of orders . . . ." *Id.* at 427, 129 S. Ct. 1749 (internal quotation marks and citation omitted). The Court decides whether to grant a stay pending appeal based on: " '(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.' " *See Chafin v. Chafin*, 568 U.S. 165, 133 S. Ct. 1017, 1027, 185 L. Ed. 2d 1 (2013) (quoting *Nken*, 556 U.S. at 434, 129 S. Ct. 1749); *Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389, 392 (5th Cir. 2013) (per curiam) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987)); *Taylor Diving & Salvage v. U.S. Dep't of Labor*, 537 F.2d 819, 821 n.8 (5th Cir. 1976). "The first two factors of the . . .standard are the most critical." *Nken*, 556 U.S. at 434, 129 S. Ct. 1749.

First, Kohn Law Group has failed to make a strong showing that it will succeed on the merits of any appeal. Kohn Law Group was and is in clear contempt of this Court's permanent injunction; upon that basis, civil contempt sanctions are warranted. Second, Kohn Law Group has failed to show it will be irreparably injured absent a stay. Finally, as set forth in detail above, the public interest lies in the prompt issuance of these compensatory sanctions against Kohn Law Group. Therefore, the factors weigh against granting the stay. The Court thus finds that Kohn Law Group's motion for stay must be denied. If Kohn Law Group wishes to pursue the issue, "the proper procedure is to apply to the court of appeals for a stay rather than appeal the district court order." *See* 16A CHARLES ALAN WRIGHT, *ET AL.*, FEDERAL PRACTICE AND PROCEDURE § 3954.

## V.    *Conclusion*

In sum, the Court finds as follows. Movant Auto Parts Manufacturing Mississippi, Inc.'s motion for the imposition of coercive and compensatory sanctions [328] against Respondent Kohn Law Group, Inc. is GRANTED.

Respondent Kohn Law Group, Inc.'s motion for a stay pending appeal of any compulsory or coercive sanctions that may be ordered [346] is DENIED.

Respondent Kohn Law Group, Inc. is in civil contempt and shall pay civil contempt sanctions as ordered in this Court's Order accompanying this memorandum opinion. As set forth in this Court's accompanying Order:

1. Respondent Kohn Law Group, Inc. shall pay to the attorneys of record in the case *sub judice* for Movant Auto Parts Manufacturing Mississippi, Inc. compensatory sanctions in the form of attorneys' fees and costs in the total amount of $373,692.50 on or before July 15, 2017.

2. Respondent Kohn Law Group, Inc. shall immediately file a motion to dismiss with prejudice all claims in the United States District Court for the Central District of California case styled *Kohn Law Group Inc. v. Auto Parts Manufacturing Mississippi Inc., et al.*, No. 2:12-cv-08063-MWF-MRW (C.D. Calif. 2012). Respondent Kohn Law Group, Inc. shall then file a notice in the case *sub judice* attaching an order of dismissal with prejudice signed and entered by the United States District Court for the Central District of California in the case styled *Kohn Law Group Inc. v. Auto Parts Manufacturing Mississippi Inc., et al.*, No. 2:12-cv-08063-MWF-MRW (C.D. Calif. 2012).

3. Respondent Kohn Law Group, Inc. shall pay coercive sanctions of $100 per day to this Court's registry from the date of this memorandum opinion and corresponding Order and Judgment until such time as this Court has entered an Order finding that Respondent Kohn Law Group, Inc. has purged itself of civil contempt, such payments to be made on or before the fifth calendar date of each month hereafter.

An Order and Judgment in accordance with this opinion shall issue this day.

THIS, the __14th__ day of June, 2017.

Glen H. Davidson

SENIOR U.S. DISTRICT JUDGE